RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0038p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

     No. 10-2407

PATRICK JOHN CORP,

        *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 10-00182-001—Robert Holmes Bell, District Judge.

Argued: September 22, 2011

Decided and Filed: February 9, 2012

Before: MOORE, GRIFFIN, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Paul Croushore, Cincinnati, Ohio, for Appellant. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul Croushore, Cincinnati, Ohio, for Appellant. Daniel Y. Mekaru, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant Patrick John Corp entered an unconditional guilty plea to the government's charge that he sexually exploited a minor in violation of 18 U.S.C. § 2251(a). The district court imposed a within-Guidelines, 360-month sentence. Corp now raises an as-applied Commerce Clause challenge to his conviction, arguing that the government's failure to demonstrate a sufficient interstate nexus resulted in a lack of federal jurisdiction. He also contests

1

the length of his sentence on both procedural and substantive grounds. In his procedural challenge, Corp argues that the district court improperly applied two provisions of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"): (1) the four-level enhancement under § 2G2.1(b)(4) (2009), for an offense involving materials that depict sadistic or masochistic conduct; and (2) the five-level enhancement under § 4B1.5(b)(1), for engaging in a pattern of activity that involves prohibited sexual conduct. Corp's accompanying substantive-reasonableness argument centers on the assertion that Corp's sentence is unreasonable in light of other defendants' sentences for similar offenses.

Because the district court considered only Corp's conduct and did not apply § 2G2.1(b)(4) based on the objective nature of the photographs at issue, we agree that the district court's application of the four-level enhancement was in error. We therefore **VACATE** Corp's sentence and **REMAND** for resentencing in accordance with this opinion.

## I. BACKGROUND

On July 15, 2010, Corp entered an unconditional guilty plea to the government's charge that he violated 18 U.S.C. § 2251(a) by producing sexually explicit photographs of a fifteen-year-old girl during a sexual encounter that took place in July 2009. According to a Presentence Investigation Report ("PSR"), Corp met the minor, S.H., on an adult-only dating website sometime in summer 2009. At that time, S.H. told him she was eighteen years old, and the two agreed to meet. S.H. indicated that on the date of their arranged meeting, Corp picked her up at her grandfather's residence and drove her to his home. Shortly after arriving, the two engaged in various sexual acts, including sexual intercourse. After engaging in the sex acts, S.H. recalled that Corp took twenty to thirty nude photographs of her in sexually explicit positions. S.H. also stated that over the course of their encounter, Corp repeatedly asked if he could urinate in her mouth and that she reluctantly acquiesced after Corp promised to allow her to spit out the urine immediately afterward. S.H. testified that after Corp performed the act, however, he grabbed her mouth and forced her to swallow. Corp has disputed this fact. Although he

admitted to urinating accidentally in S.H.'s mouth, he denied having forced her to swallow and instead stated that he brought her a towel in which to dispose of the urine.

In early October 2009, the Michigan Department of State Police ("MSP") received a report from a Department of Human Services case worker indicating that S.H. was having sexual relations with two adult men. After S.H. disclosed her encounter with Corp to the MSP, officers executed a search warrant for Corp's residence. During the search, they seized a large number of sexually explicit photographs of women, Corp's laptop, and various other items. On the laptop, law enforcement later discovered about 18,000 images, including photos of S.H. with Corp's penis penetrating her mouth and photographs of S.H.'s face after Corp had ejaculated on it. The search also uncovered a CD-ROM with seven images of another young female, five of which depicted her performing oral sex on Corp. The young female in the photo had orthodontic braces, and the government asserted that it believed her to be under the age of eighteen but was unable to confirm her identity. Corp countered that of the 18,000 photos discovered on his computer, the only ones involving a minor were those of S.H. Although he admitted to having an interest in younger women, he denied ever targeting underage girls.

Corp was convicted of a previous child-pornography offense in July 1999 after he pleaded guilty to violating 18 U.S.C. § 2252(a)(4)(B) by taking sexually graphic pictures of a seventeen-year-old girl. The PSR described the previous case as involving photos of the seventeen-year-old in the nude and in suggestive positions on the bed with her legs spread apart. A government exhibit containing the actual photos, however, shows the girl engaging in sexual intercourse with Corp and in oral sex with another woman. A separate exhibit contains an excerpt from the 1999 plea hearing, in which Corp admitted that the girl in the photographs was only seventeen. That conviction was later dismissed on the ground that the charges lacked a sufficient nexus to interstate commerce to justify federal jurisdiction. *See United States v. Corp*, 236 F.3d 325 (6th Cir. 2001).

Applying the November 1, 2009 edition of the Guidelines, the PSR recommended a base offense level of 32 under § 2G2.1(a). The PSR added two levels

because the offense involved a minor, who was fifteen years old, § 2G2.1(b)(1)(B), and another two levels because the offense involved "the commission of a sexual act," § 2G2.1(b)(2)(A). Based on the photos of Corp's penis penetrating S.H.'s mouth and those of Corp's semen on S.H.'s face, the PSR included a four-level enhancement under § 2G2.1(b)(4), for depictions of sadistic or masochistic conduct. In addition, because the probation officer determined that Corp had sexually exploited at least two minors, the PSR recommended a five-level enhancement under § 4B1.5(b), for "engag[ing] in a pattern of activity involving prohibited sexual conduct." Finally, the PSR subtracted two levels for acceptance of responsibility, § 3E1.1(a), and another level for Corp's timely notification of his intent to plead guilty, § 3E1.1(b).

Over Corp's objections, the district court applied the § 2G2.1(b)(4) and § 4B1.5(b) enhancements. Rather than adopting the PSR's justification for applying § 2G2.1(b)(4), however, the district court appeared to rely exclusively on S.H.'s description of the urination act, which was not in fact depicted in any of the photographs. After determining that the enhancements applied, the district court calculated Corp's total offense level after adjustments to be 42. Although the Guidelines range for a total offense level of 42 and a criminal history category of I is 360 months to life, the statutory maximum for a conviction under 18 U.S.C. § 2551(a) is 30 years. Thus, after considering the recommended Guidelines range and statutory maximum and addressing the 18 U.S.C. § 3553 factors, the district court imposed a sentence of 360 months of imprisonment.

## II. ANALYSIS

### A.     Corp's Unconditional Guilty Plea Waived His Commerce Clause Challenge on Appeal

We first address Corp's arguments on the Commerce Clause issue. Relying primarily on his earlier case, *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001), Corp argues that § 2251(a) is unconstitutional as applied because his case lacks a sufficient nexus to interstate commerce. Specifically, Corp asserts that the mere fact that his camera and computer traveled in interstate commerce is not enough to permit federal

jurisdiction. The government responds that Corp's voluntary and conditional guilty plea waived his right to raise the Commerce Clause issue. Furthermore, the government contends that even if we were to consider the constitutional challenge, it is without merit.

We review de novo the question whether a defendant has waived his right to appeal. *United States v. Martin*, 526 F.3d 926, 932 (6th Cir.), *cert. denied*, 129 S. Ct. 305 (2008). Because Corp entered an unconditional guilty plea, we conclude that he has waived his right to raise his Commerce Clause argument on appeal.

"Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *Id.* (quoting *United States v. Pickett*, 941 F.2d 411, 417 (6th Cir. 1991)). Although a defendant may enter a conditional guilty plea that reserves the right to appellate review of an adverse determination in the district court, the defendant must affirmatively preserve such challenges if he wishes to present them on appeal. *Id.* at 416; *see also* FED. R. CRIM. P. 11(a)(2). If the defendant fails to obtain "a court-approved reservation of issues for appeal," the guilty plea waives any subsequent challenge to the prosecution that does not pertain to the fundamental question of the court's jurisdiction. *Martin*, 526 F.3d at 932 (internal quotation marks omitted).

Although Corp maintains that he has properly raised a jurisdictional challenge to the felony information on which he was charged, we disagree. To assert a jurisdictional challenge successfully, "a defendant who enters a guilty plea must establish that the face of the indictment failed to charge the elements of a federal offense." *Id.* at 934. Corp's arguments simply do not bring his conviction within this narrow category of cases that surpass the bar against non-jurisdictional attacks.

Initially, Corp's assertion that his case lacks the requisite "jurisdictional element" misses the fact that we have previously held analogous arguments to involve non-jurisdictional issues subject to waiver. *See, e.g.*, *United States v. Turner*, 272 F.3d 380, 390 (6th Cir. 2001) ("Although the Hobbs Act's interstate commerce element is commonly referred to as a 'jurisdictional element,' the failure of the government to prove a nexus between the crime and interstate commerce is not jurisdictional in a sense that it deprives the district court of subject matter jurisdiction."). Indeed, in *United*

*States v. Studabaker*, 578 F.3d 423 (6th Cir. 2009), we applied these principles to a case that involved a similar interstate-nexus issue under a related child-pornography statute—18 U.S.C. § 2252A(a)(5)(B). There, we directly applied *Martin* and determined that, in spite of the defendant's attempt to characterize his claim as impacting our jurisdiction, the interstate-commerce argument actually presented a non-jurisdictional issue. *Studabaker*, 578 F.3d at 429. As a result, the defendant's failure to reserve that challenge at the plea hearing waived his right to appellate review. *Id.* at 429–30; *see also United States v. Sealed Appellant*, 526 F.3d 241, 243 (5th Cir.) (holding that the defendant's unconditional guilty plea waived his as-applied Commerce Clause challenge to his conviction under § 2251(a)), *cert. denied*, 129 S. Ct. 521 (2008).

Perhaps recognizing that *Martin* and *Studabaker* foreclose his argument, Corp's reply brief attempts to transform his claim into one alleging that the "face of the indictment failed to charge the elements of a federal offense." Reply Br. at 9 (quoting *Martin*, 526 F.3d at 934). The facts clearly belie that assertion. The felony information unambiguously lists all of the elements required for conviction under § 2251(a), including a jurisdictional element expressly indicating that the visual depictions "were produced using materials which had been shipped and transported in interstate and foreign commerce," and that Corp "produced approximately eighteen (18) digital images of the sexually explicit conduct using . . . a Canon digital camera and Hewlett-Packard brand laptop computer with components that were manufactured outside the State of Michigan." R. 1 (Felony Information at 1–2). At the plea hearing, the government reiterated these allegations, and Corp pleaded guilty without objecting to them. R. 30 (Plea Hr'g at 5–6). In doing so, Corp effectively admitted to the basis for federal jurisdiction. *See Turner*, 272 F.3d at 390 ("Through his guilty plea, [the defendant] admitted the factual basis for jurisdiction as charged in his indictment. Thus, [the defendant's] challenge is nonjurisdictional and has been waived."). Accordingly, there

is no question whether the information properly invoked federal jurisdiction, and Corp's unconditional guilty plea waived appellate review of his Commerce Clause challenge.[1]

## B.  Reasonableness Review of Corp's 360-Month Sentence

### 1.  Standard of Review

We review sentences for reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007).  Reasonableness involves both procedural and substantive components.  *See id.* at 51.  "First, an appellate court must ensure that the district court did not commit significant procedural error . . . ."  *United States v. Brown*, 579 F.3d 672, 677 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 1106 (2010).  A sentence is procedurally unreasonable if, for example, the district court "fail[ed] to calculate (or improperly calculat[ed]) the Guidelines range, treat[ed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, select[ed] a sentence based on clearly erroneous facts, or fail[ed] to adequately explain the chosen sentence."  *Gall*, 552 U.S. at 51.  We then review for substantive reasonableness.  "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)."  *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010).  Thus, "[a] sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor."  *Id.* at 633 (internal quotation marks omitted).

In evaluating the reasonableness of Corp's sentence, "[t]he district court's interpretation of the advisory Guidelines is reviewed *de novo*, and its findings of fact are

---

[1]We pause to note that even if we were to decide Corp's as-applied challenge, our opinion in *United States v. Bowers*, 594 F.3d 522 (6th Cir.), *cert. denied*, 131 S. Ct. 340 (2010), would easily dispose of his claim.  Corp's invitation for this court to apply the factors set out in the pre-*Gonzales v. Raich*, 545 U.S. 1 (2005), case *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001), completely ignores *Bowers*, which rejected a nearly identical as-applied challenge and, in doing so, "recognize[d] explicitly that [*Corp*] is no longer the law of the Circuit."  *Bowers*, 594 F.3d at 524.  Sounding the death knell for Commerce Clause challenges such as this one, we further concluded that we "[could not] envision, after *Raich*, a circumstance under which an as-applied Commerce Clause challenge to a charge of child-pornography possession or production would be successful."  *Id.* at 530.  Thus, even absent the waiver, Corp's argument would be destined to fail on the merits.

reviewed for clear error." *Brown*, 579 F.3d at 677. "Whether the facts found warrant the application of a particular guideline provision is a legal question reviewed de novo." *United States v. Coleman*, 627 F.3d 205, 211 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 2743 (2011). If a defendant fails to raise an objection before the district court, however, our review is only for plain error. *Id.*

### 2. Procedural Reasonableness

#### a. Allegations of Sadistic or Masochistic Conduct Alone Do Not Justify the § 2G2.1(b)(4) Enhancement; the Offense Must Involve Materials that Actually Depict Such Conduct

Corp first challenges the district court's application of U.S.S.G. § 2G2.1(b)(4). Guideline § 2G2.1(b)(4) provides for a four-level sentencing enhancement "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." "Material" is defined to include "a visual depiction," and "minor" includes any individual "who had not attained the age of 18 years." *Id.* cmt. n.1.

In support of his argument, Corp argues, among other things, that: (1) S.H. assented to having the photographs taken and to engaging in the sexual acts; (2) the images do not portray S.H. grimacing or otherwise showing discomfort or pain and therefore fail to qualify as depicting sadistic or masochistic conduct; and (3) no image depicts the act of urination that the district court relied on to impose the enhancement. Although he concedes that the photos of S.H. with semen on her face depict "disgusting conduct," Appellant Br. at 25, Corp asserts that they do not rise to the level of sadistic or masochistic and that S.H. was "neither degraded nor disgraced by the images at issue," *id.* at 26. Disagreeing with that characterization, the government observes that "[t]he act of ejaculating on someone's face is purposefully degrading and humiliating. [Corp] . . . took several photos of the girl with her face covered with his semen. Those images depict degrading and humiliating acts and the enhancement of 4 levels was proper." Appellee Br. at 21–22.

At the sentencing hearing, the district court's application of § 2G2.1(b)(4) appeared to rely exclusively on the urination act, which, as Corp correctly points out, is

not depicted in any photograph. Resting entirely on the disturbing nature of that behavior, the district court applied § 2G2.1(b)(4) without making any further findings concerning whether the materials themselves displayed sadistic or masochistic conduct; in fact, the district court even stated that there was no "actual proof of photographs" depicting the urination act that the court cited to justify the four-level enhancement. R. 31 (Sent. Hr'g Tr. at 12).

Initially, we note that although Corp made a general objection to the district court's application of § 2G2.1(b)(4), Corp failed to object to the district court's application of the enhancement on the basis of conduct alone. At sentencing, Corp's attorney cited cases addressing sadistic or masochistic depictions, but counsel's argument as applied to Corp rested more on the nature of Corp's overall behavior—e.g., that there was "no violence, no pain inflicted in the particulars in this case." *Id.* at 10. The district court followed this argument by addressing S.H.'s statements regarding the urination act. As the following exchange illustrates, rather than redirecting the district court to the nature of the photographs, defense counsel merely disputed the facts surrounding Corp's behavior:

> THE COURT: I look at Paragraph 17 [of the PSR] which has not been objected to in the presentence report, and this S.H. is indicating that she was asked if he could urinate in her mouth. She stated she refused, but after repeated requests she allowed him to do so. She stated he agreed to allow her to spit out the urine immediately afterward. She stated she was scared and reluctant but allowed him to urinate in her mouth. She stated he immediately grabbed her mouth and told her to swallow the urine. She stated she only swallowed it because she was scared and forced to do it. She stated his voice was very scary and demanding. Did I read it correctly?
> MR. DODGE: Yes, sir.
> THE COURT: Has it not been objected to?
> MR. DODGE: Your Honor, on that point Mr. Corp has a different description of what happened and that there was not an act of urination.
> THE COURT: So despite the fact that you did not object to this as being inaccurate, your position is that your client stated that it was enjoyed and it was not in any way forceful?
> MR. DODGE: That there was no forced conduct, Your Honor. Nothing was done that was non-consensual with the complainant.

*Id.* at 10–11. Based on that exchange, the district court determined the enhancement to apply, concluding:

> [t]he very nature of this is unbelievably disgusting, unbelievably disgusting from any standpoint. I find that it is—if that's not sadistic, masochistic, I don't know what is. Obviously there's torture and things like that, but this for a person who's under the age of 18, I think this clearly falls within the four-level adjustment that 2G2.1(b)(4) addresses. Clearly, clearly. If this doesn't, then you ask for scars and intentional infliction, and I think this is as close as you can get without having actual proof of photographs. I've seen photographs before of all kinds of situations, but this is thoroughly disgusting. I think it's well involved in that. Your objection is noted, though, and preserved.

*Id.* at 11–12. Despite the district court's clear misapplication of the Guidelines, when provided the opportunity to make any final legal objections at the end of the hearing, defense counsel again failed to raise anything more than his earlier general objection to the enhancement.

To avoid plain-error review, "[a] party must object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004) (internal quotation marks omitted). We have emphasized the importance of such objections, both because they give the district court an opportunity to correct its own errors and because they provide a better record for appellate review. *Id.* ("A specific objection provides the district court with an opportunity to address the error in the first instance and allows this court to engage in more meaningful review."). In this case, however, we need not evaluate whether Corp's objection was sufficient to permit de novo review rather than the more deferential plain-error review. The district court's application of § 2G2.1(b)(4) was erroneous under either standard. While we cannot deny that the district court's disgusted reaction to Corp's behavior was justified, we nonetheless conclude that, despite its disturbing nature, the undepicted act of urination was irrelevant to the court's application of § 2G2.1(b)(4). The district court's determination to the contrary is alone enough to warrant remand. Because our cases have not previously set out a

comprehensive framework for applying this enhancement, however, we first establish principles for the proper application of § 2G2.1(b)(4).

Because the Guidelines do not define the phrase "sadistic or masochistic conduct or other depictions of violence," we "look to the common meaning[s] of those terms to determine their application." *United States v. Groenendal*, 557 F.3d 419, 425 (6th Cir. 2009) (internal quotation marks omitted). We have previously defined "sadism" as "the infliction of pain upon a love object as a means of obtaining sexual release." *Id.* (quoting *United States v. Lyckman*, 235 F.3d 234, 238 n.19 (5th Cir. 2000), *cert. denied*, 532 U.S. 986 (2001)). Although our earlier cases have generally involved only the infliction of physical pain, *see United States v. Phillips*, 383 F. App'x 527, 533 n.2 (6th Cir. 2010) (unpublished opinion), we do not believe that the ordinary definition of sadism is so limited. *See Merriam Webster's Collegiate Dictionary* 1029 (10th ed. 1995) (defining sadism as "a sexual perversion in which gratification is obtained by the infliction of physical *or mental* pain on others (as on a love object)" (emphasis added)). Indeed, the inclusion of more than just physical pain in this context is consistent with the precedent of many of our sister circuits. *See United States v. Maurer*, 639 F.3d 72, 80 (3d Cir. 2011) (noting other circuits' inclusion of mental harm in the definition of sadism and indicating the court's "belief that the application of § 2G2.2(b)(4) is not limited to circumstances where the pain that would result from the depicted conduct is the result of sexual penetration by an adult or bondage of a child"); *United States v. Freeman*, 578 F.3d 142, 145–46 (2d Cir. 2009) (identifying "delight in physical or mental cruelty" as an ordinary definition of "sadistic" (quoting *Webster's Third New International Dictionary* 2254 (1986)); *United States v. Hoey*, 508 F.3d 687, 691 (1st Cir. 2007) (same); *United States v. Rearden*, 349 F.3d 608, 615 (9th Cir. 2003) (same); *United States v. Parker*, 267 F.3d 839, 847 (8th Cir. 2001) (stating that "the terms 'violence' and 'sadism,' as ordinarily used, are not limited to activity involving a rope, belt, whip, chains, or other instruments" and determining that "painful, coercive, abusive, and degrading" conduct also qualify as "sadistic" under the Guidelines), *cert. denied*, 535 U.S. 1011 (2002); *United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999) (concluding that the terms sadistic and masochistic also include "sexual gratification

which is purposefully degrading and humiliating [and] conduct that causes mental suffering or psychological or emotional injury in the victim" and that the enhancement may therefore be warranted even when images do not portray any kind of violence); *United States v. Comeaux*, No. 10-30234, 2011 WL 3911083, at \*2 (5th Cir. Sept. 2, 2011) (unpublished opinion) (observing that "many depictions which are unarguably sadistic in nature do not involve violence or pain, but rather subjugation and humiliation").**[2]**

Also warranting application of § 2G2.1(b)(4) are images that contain depictions of masochistic conduct and images that fall into the catch-all category "other depictions of violence." Under a plain-meaning analysis, masochistic images would include those depicting "a sexual perversion characterized by pleasure in being subjected to pain or humiliation, esp[ecially] by a love object." *Merriam Webster's Collegiate Dictionary*, *supra*, at 714. To round out these foundational principles, we turn finally to the phrase "other depictions of violence." Here, however, it is not enough simply to look to ordinary meaning. Rather, because of its association with the terms "sadism" and "masochism," the reach of the phrase "other depictions of violence" is limited by those definitions. *See Lyckman*, 235 F.3d at 238. Thus, as the Fifth Circuit aptly observed, although the "ordinary meaning of 'violence' [is] 'the exertion of any physical force so as to injure, damage or abuse,'" the term cannot be construed so broadly in the present context. *Id.* (quoting *Black's Law Dictionary* 1570 (6th ed. 1990)). Instead, citing "[t]he venerable principle of *ejusdem generis*," *Lyckman* appropriately clarified that "the general term 'other depictions of violence' casts its net no wider than necessary to capture images akin to those" encompassed by the more specific terms "sadistic" and "masochistic." *Id.*

---

**[2]** We note that some of the citations in the preceding paragraph involved U.S.S.G. § 2G2.2(b)(4), which is the enhancement for trafficking, rather than producing materials involving the sexual exploitation of a minor. Guideline § 2G2.2(b)(4), however, contains the identical four-level enhancement for offenses involving "material that portrays sadistic or masochistic conduct or other depictions of violence" as the provision at issue here. Furthermore, because some of the cases involve earlier versions of the Guideline enhancements, we also observe that both § 2G2.2(b)(4) and § 2G2.1(b)(4) were renumbered in the November 1, 2004 version of the U.S. Sentencing Guidelines from § 2G2.2(b)(3) and § 2G2.1(b)(3), respectively. The language in each of those Guidelines remains the same as it was before the 2004 amendment.

While the above definitions provide a worthy starting point for sentencing courts seeking to apply § 2G2.1(b)(4), a few additional principles apply.  First, we agree with our sister circuits that whether a particular image can be classified as portraying sadistic or masochistic conduct under § 2G2.1(b)(4) is an objective determination.  *See, e.g.*, *Maurer*, 639 F.3d at 80; *United States v. Raplinger*, 555 F.3d 687, 694–95 (8th Cir.), *cert. denied*, 129 S. Ct. 2814 (2009); *Freeman*, 578 F.3d at 146.  Thus, the court must consider what the material at issue actually portrays rather than making subjective determinations about the thoughts or intentions of the specific individuals being depicted.  In other words, whether an adult in the image is in fact intending to inflict physical or mental pain and whether the minor in fact experiences such pain are immaterial.  Rather, the court must determine, based on the contents within the four corners of the image, whether the circumstances being portrayed are such that an outsider would perceive them as depicting the infliction of pain or humiliation on the minor.  In sum, we hold that in order to apply the § 2G2.1(b)(4) enhancement, a sentencing court must determine by a preponderance of the evidence that an image or material (1) depicts sexual activity involving a minor and (2) portrays conduct that would cause an objective viewer to believe—without regard to the undepicted circumstances of the sexual encounter—that the pictured activity is inflicting physical pain, emotional suffering, or humiliation on that minor.

In some cases, the above framework presents a straightforward inquiry.  As we have previously held, cases involving the sexual penetration of prepubescent children are inherently sadistic.  *Groenendal*, 557 F.3d at 425–26; *see also United States v. Fuller*, 77 F. App'x 371, 383–84 (6th Cir. 2003) (unpublished opinion), *cert. denied*, 541 U.S. 968 (2004).  This is because, from the standpoint of an objective viewer, such cases unquestionably involve "the depiction of a sexual act that is likely to cause pain in one so young." *Groenendal*, 557 F.3d at 425 (internal quotation marks omitted)).  The same is true for images depicting bondage, which, even if engaged in by consenting adults experiencing no pain at all, would be objectively perceived as portraying a sadistic act. *Cf. Raplinger*, 555 F.3d at 694–95 (emphasizing the need to focus on "what the material

portrays" rather than permitting the defendant to avoid the enhancement on the basis that, despite the depiction of bondage, the minor was not actually in pain).

The facts here, however, are more complicated. Although the images involve conduct that depicts more than ordinary sexual intercourse with a minor—an offense for which Corp has already been sentenced under U.S.S.G. § 2G2.1(a)—the question is whether the images of S.H. with Corp's semen on her face reach the level of objectively depicting sadistic or masochistic conduct. Although we have never confronted analogous circumstances, other circuits have found portrayals of somewhat comparable behavior to fall within these definitions. In *United States v. Parker*, for example, the Eighth Circuit determined that an image of "an adult male ejaculating into the face and open mouth of a crying baby" was a depiction of sadistic conduct because it involved "the infliction of pain upon a love object as a means of obtaining sexual release." 267 F.3d at 847 (internal quotation marks omitted). Similarly, *United States v. Turchen* concerned an image that depicted a "grimacing prepubescent nude female" with three males urinating on her face. 187 F.3d at 739 (internal quotation marks omitted). There, the Seventh Circuit deemed the enhancement appropriate based on the view that the image portrayed "the infliction of harm, in fact violent harm, both physical and mental, on the child victim." *Id.* at 740. The child's grimacing expression further conveyed to any objective viewer a sense that the circumstances involved the infliction of serious pain.

On the other hand, it is also apparent that the materials at issue in *Parker* and *Turchen* were an order of magnitude different from those at issue here. In this case, the photographs do not depict a prepubescent child and S.H.'s expression does not seem to convey what could objectively be perceived as a manifestation of humiliation or disgust. Furthermore, both *Parker* and *Turchen* involved materials that portrayed individuals who were presently engaged in the sadistic or masochistic conduct. Here, however, the materials display only S.H.'s face and do not show Corp engaged in the act of ejaculation. Thus, the conduct that the government identifies as "purposefully degrading

and humiliating," Appellee Br. at 21–22, is not actually depicted in the photographs, although the photographs do show the results of that conduct.

As this analysis illustrates, evaluating materials pursuant to § 2G2.1(b)(4) often involves a case-by-case determination. Although the foregoing paragraphs raise some potential considerations in deciding whether § 2G2.1(b)(4) ultimately applies in this case, because of the inherently fact-based nature of the inquiry, we do not believe it prudent for us to resolve the issue in the first instance. Because the district court is better suited to resolving such questions initially, we instead conclude that the most appropriate course is to leave to the district court the determination whether the § 2G2.1(b)(4) enhancement applies in light of the framework set forth above. On that basis, we therefore remand for resentencing in accordance with this opinion.

### b. The District Court Did Not Err in Determining that Corp Engaged in a Pattern of Activity Involving Prohibited Sexual Conduct

Guideline § 4B1.5(b)(1) provides for a five-level increase if "the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of activity involving prohibited sexual conduct." The application notes define "prohibited sexual conduct" as including "the production of child pornography."[3] *Id.* cmt. n.4(A). A pattern of activity may exist "if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor," *id.* cmt. n.4(B)(i), with "minor" again defined as "an individual who had not attained the age of 18 years," *id.* cmt. n.1. "An occasion of prohibited sexual conduct may be considered . . . without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." *Id.* cmt. n.4(B)(ii). Because Corp raised an objection to the application of this enhancement both in his objections to the PSR and at sentencing, we review the factual findings underlying

---

[3] Child pornography, in turn, is defined as "any visual depiction . . . of sexually explicit conduct," 18 U.S.C. § 2256(8), with the term "sexually explicit" defined in relevant part as "graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex," *id.* § 2256(2)(B)(i).

the district court's application of § 4B1.5(b)(1) for clear error.  *See Brown*, 579 F.3d at 677.

The government points to three separate instances of prohibited sexual conduct that support the district court's application of the five-level enhancement:  (1) the instant offense; (2) photographs of a seventeen-year-old girl engaged in sexual acts, which surfaced in the 1999 case; and (3) pictures of an unidentified, young-looking girl with orthodontic braces performing oral sex.  At sentencing, Corp initially challenged the second instance by stating that there was no lascivious exhibition of the seventeen-year-old's genitals in the photos in the prior case and that it therefore did not count as an occurrence of prohibited sexual conduct.  The government, however, responded with exhibits containing the photos from the 1999 case, and those photos indisputably refute Corp's disingenuous contentions regarding their sexually explicit nature.  That the prior conviction was overturned on Commerce Clause grounds is also of no consequence.  *Cf. United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc) (permitting acquitted conduct that has been proved by a preponderance of the evidence to be taken into account when fashioning a sentence), *cert. denied*, 129 S. Ct. 2071 (2009).  The plain language of § 4B1.5(b)(1) supports application of the enhancement when the government demonstrates by a preponderance of the evidence that a defendant, on more than one occasion, produced sexually explicit images of an individual under the age of eighteen.  *United States v. Berringer*, 393 F. App'x 257, 262 (6th Cir. 2010) (unpublished opinion) ("The applicability of the pattern-of-abuse enhancement is a factual determination that the sentencing court need find only by a preponderance of evidence.").  There is no question that the government successfully met that burden here.

The government also adequately demonstrated the existence of a third instance of prohibited conduct.  The PSR stated that Corp possessed seven images of a young-looking female performing oral sex.  The PSR noted that the female in the photos had orthodontic braces and appeared to be under the age of eighteen, though authorities had been unable to confirm that fact.  Corp, however, never even attempted to contest these facts, either in his objections to the PSR or at sentencing.  Because Corp failed to

produce any evidence to contradict the facts stated in the PSR on this issue, the district court was entitled to rely on them in fashioning a sentence. *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007). Moreover, after reviewing the images, the district judge also made independent findings as to the age of the girl in the photograph, stating that the girl with braces "look[ed] about 12 or 13 and maybe even 14 in the picture." R. 31 (Sent. Hr'g Tr. at 15). Based on our review of the evidence, that finding was not clearly erroneous.

As the Guidelines language plainly indicates, the sexual encounter with S.H. that forms the basis for Corp's present conviction counts as one of the two instances of prohibited sexual conduct required to support the district court's application of § 4B1.5(b)(1). Thus, citing the above occurrences, as well as testimony that Corp has been involved with 450 to 500 usually young-looking women, the district court concluded,

> I think there's a pattern here. There's clearly a pattern. If there isn't one here, I don't know where you'd find one. . . . [I]t seems to be a pattern of activity including prohibited sexual conduct with young persons, and the factual basis that goes back even to that previous conviction this Court believes is relevant because there appears with that many women and that many circumstances that the defendant has admitted clearly to be a pattern. Clearly to be a pattern.
> So therefore, I think it can stand. I think it's been established in this case. I think the government has presented a sufficient amount of factual basis and the presentence report substantiates that in this case.

*Id.* Although when imposing the sentence, the district court appeared to consider Corp's entire sexual history—most of which did not involve minors—the court specifically cited the photos of the girl with braces, the current offense, and Corp's prior conviction as support for its application of § 4B1.5(b)(1). Those three instances were more than enough to justify the five-level enhancement.

### 3. Substantive Reasonableness

Corp's final argument relates to the substantive reasonableness of his sentence. His sole argument to support that claim is based on a handful of cases involving similarly situated defendants who received lesser sentences but were convicted of arguably more egregious offenses. Predictably, the government responds to Corp's argument by pointing out a similar number of cases in which comparable offenses received much greater sentences.

Because we remand on procedural grounds, we need not wade into this dispute at this time. *See United States v. Taylor*, 648 F.3d 417, 433 (6th Cir. 2011). We note, however, that although national sentencing disparities are undoubtedly a factor under 18 U.S.C. § 3553(a) that sentencing judges must consider, we have previously "criticized the comparison of the defendant's sentence to those imposed in other singular cases as weak evidence to show a national sentencing disparity." *United States v. Rossi*, 422 F. App'x 425, 435 (6th Cir. 2011) (unpublished opinion) (collecting cases). The mere fact that a defendant cites other cases in which courts determined certain defendants to be deserving of different sentences does not demonstrate abuse of discretion in the instant case. *See id.*; *cf. United States v. Lapsins*, 570 F.3d 758, 774 (6th Cir. 2009) ("[T]he fact that a judge in an unrelated case found a specific individual deserving of a downward departure does not mean that the judge in this case plainly erred by sentencing [defendant] within the Guidelines after considering the nature of his crime and his personal characteristics."). Our remand provides the district judge with the opportunity to address explicitly this issue raised by Corp.

### III. CONCLUSION

Because the district court's application of § 2G2.1(b)(4) was based solely on conduct that was not depicted in the photographs, its application of the four-level enhancement was procedurally unreasonable. Thus, for the reasons discussed above, we **VACATE** Corp's sentence and **REMAND** for resentencing in accordance with this opinion.