**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0011n.06

**Case No. 16-2304**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jan 05, 2018

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DONALD CLIFTON ALLEN, JR., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| *Defendant-Appellant* | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:   COLE, Chief Judge; McKEAGUE and STRANCH, Circuit Judges.

COLE, Chief Judge.  Defendant Donald Clifton Allen, Jr., a self-proclaimed reality TV star, thought that his television show about his life was going to make him rich.  Instead, Allen was convicted by a jury for prostitution and child pornography offenses and sentenced to 300 months in prison.  He now challenges the denial of his motion to suppress evidence found during the search of an apartment where he was staying.  Allen also argues that his sentence is procedurally unreasonable because the district court incorrectly applied a four-level enhancement for sadistic sexual material.  We affirm the district court's denial of Allen's motion to suppress, vacate Allen's sentence, and remand to the district court for resentencing.

# I.  BACKGROUND

Just after midnight on June 22, 2009, a police officer saw a car cut through traffic and jump a curb.  Yun Hindy was driving.  While investigating Hindy for drunk driving, the officer's focus shifted to the passengers in Hindy's car—Donald Allen and 17-year-old Jennifer Nelson.  The officer also noticed that Nelson was wearing "nightclub attire" that "didn't fit" with what the other passengers were wearing.  Based on Nelson's attire, the officer asked Hindy if Nelson was a prostitute.  Hindy said that she was, and at some point Nelson also told officers that she worked for Allen.  Hindy also told the officer that Allen had been staying with her for several weeks.  Hindy was subsequently arrested for driving under the influence.

While in custody, Hindy told officers that she wanted the police to watch her apartment because Allen did "bad things with young women" and sold marijuana there.  Both Allen and Nelson were staying in a bedroom in Hindy's apartment.  Hindy believed that Allen was selling drugs because she smelled burnt marijuana in the apartment and people would frequently come and go from the back bedroom.  On several occasions, Allen left Nelson alone with men in the bedroom.  Allen also bragged to Hindy about advertising his prostitution business in the *Metro Times* and asked her to pose for the ads.

Hindy told police she wanted Allen out of her apartment and asked them to remove his belongings.  She explained that Allen had some clothing and duffle bags in the bedroom where he had been sleeping on an air mattress, and that she believed he had drugs.  Hindy told the detectives that she also had personal items in the bedroom.  At this point, Hindy signed a consent-to-search form and gave the detectives her keys.  Two detectives went to search the apartment.

The detectives walked through the entire apartment and found the bedroom where Allen had been staying. The apartment was consistent with Hindy's description. The door was unlocked. They found an air mattress in the back bedroom. And Hindy's personal items were in the closet. Based on their observations, the officers concluded that Hindy had access to the room.

The detectives continued their search. Four items caught their eyes: two cellphones, one laptop, and a video camera. According to the searching officers, nothing on the outside of these items indicated their owner. The bags in the closet, a purse and a backpack, also had no external identification. The detectives opened the purse and found an Altoids tin containing marijuana. They also opened the backpack and seized a laptop. The detectives did not look at the cellphones or laptop to determine who owned the items. They did, however, turn on the camcorder to, in their words, "figure out who it belonged to." The searching officer viewed about two minutes of footage on the camcorder. The footage featured a nude 17-year-old female later identified as Nelson. After watching the video, the officers concluded their search. The detectives ultimately seized the cellphones, purse, marijuana, two laptops, and the camcorder as evidence. Two days later, after her release, Hindy turned two additional laptops over to police.

Based in part on the sexually explicit camcorder footage, the detectives obtained a search warrant for a forensic search of the camcorder, laptops, and cellphones. Before getting the warrant, the officers saw Allen in custody and told him that they went to the apartment and seized the items as evidence. According to one officer, Allen responded by telling him that he was "legit" and was in the process of making a reality TV show that would make him rich. Despite his claims, officers continued to investigate Allen, executing search warrants for a pawn shop, a storage locker, and his sister's home.

After a three-year investigation, Allen was charged with (1) transportation of a minor for criminal sexual activity, 18 U.S.C. §§ 2423(a), 2423(3); (2) transportation of an adult in interstate commerce for prostitution, 18 U.S.C. § 2421; (3) production of child pornography, 18 U.S.C. § 2251; and (4) possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B).

Allen moved to suppress the evidence obtained during the apartment search. The district court denied the motion because, in its view, Allen did not have a reasonable expectation of privacy in Hindy's apartment. Allen was ultimately convicted by a jury on all counts.

A Presentence Investigation Report (PSR) was prepared for Allen's sentencing. The PSR recommended a four-level enhancement under U.S.S.G. §2G2.1(b)(4) for sadistic material based on sexually explicit images of adults. The PSR also recommended grouping the four counts corresponding to Nelson. The district court adopted the PSR, grouped the counts relating to Nelson, and applied the sadism enhancement. Allen was sentenced to 300 months in prison. He timely appealed.

## II. ANALYSIS

### A. Allen's Motion to Suppress

When reviewing the denial of a motion to suppress, we examine the district court's conclusions of law de novo and its factual findings for clear error. *United States v. Lucas*, 640 F.3d 168, 173 (6th Cir. 2011). We may affirm on any ground supported by the record. *United States v. Binford*, 818 F.3d 261, 267 (6th Cir. 2016). The district court incorrectly concluded that Allen did not have a reasonable expectation of privacy in the bedroom where he slept. Still, the district court was correct to deny Allen's motion because the officers would have discovered the evidence independent of the apartment search.

### 1. Allen Had a Reasonable Expectation of Privacy in the Apartment

The Fourth Amendment protects people, not places. *Katz v. United States*, 389 U.S. 347, 351 (1967). This protection depends on "whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 144 (1978) (citing *Katz v. United States*, 389 U.S. 347, 353 (1967)); *Minnesota v. Olson*, 495 U.S. 91, 95 (1990). A person—whether social guest or renter—has a reasonable expectation of privacy in the place where he sleeps at night. *Olson,* 495 U.S. at 96–97. To determine whether such an expectation of privacy is reasonable, this court considers "the person's proprietary or possessory interest in the place to be searched or item to be seized[;] whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises." *United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005) (quoting *United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000)).

Because Allen was an overnight guest, he had a reasonable expectation of privacy in the apartment. As the Supreme Court has explained, a person's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Olson*, 495 U.S. at 96–97; *see also Minnesota v. Carter*, 525 U.S. 83, 90 (1998). And this court has broadly interpreted the Fourth Amendment to protect nearly all overnight guests, clarifying that these Fourth Amendment protections extend to those who occupy common areas in an apartment that are freely accessible to others. *See United States v. Pollard*, 215 F.3d 643, 647–48 (6th Cir. 2000). People—whether renters, couch surfers, or nomads—have a reasonable expectation of privacy in places that function as home.

The use of a space for illegal activity does not alter these privacy expectations, so long as the person is an overnight, not business, guest. *See Carter*, 525 U.S. at 91. In *Pollard*, for example, we found that a defendant had a reasonable expectation of privacy in a home where he occasionally spent the night on the couch in the living room, had slept on the couch earlier in the week, had a personal relationship with the tenant, and kept some personal belongings in a closet. 215 F.3d at 645–47. We rejected the argument that Pollard did not have a reasonable expectation of privacy in the home because he used the home to sell drugs, going as far as to invite an undercover officer—a stranger—into the home to buy cocaine. *Id*.

A king or a criminal may assert a violation of the Fourth Amendment. Accordingly, we easily conclude that Allen had a reasonable expectation of privacy in the apartment, particularly in the back bedroom where he slept. For two weeks, the apartment was Allen's home. He kept various personal items, clothing, cell phones, and laptops, in the back bedroom of the apartment. Even though Allen, like Pollard, conducted illegal business from Hindy's apartment, it was his home for the two weeks he lived there. The district court erred in finding that Allen did not have a reasonable expectation of privacy in the bedroom.

## 2. The District Court Correctly Denied Allen's Motion to Suppress

In finding the search constitutional, the court below only reached whether Allen had a reasonable expectation of privacy in the apartment. And while the district court erred in that conclusion, it did not err in its outcome. The district court correctly denied Allen's motion to suppress as the evidence at issue is admissible under the independent source rule.

Under the independent source rule, evidence is admissible if the government shows it was discovered through sources "wholly independent of any constitutional violation." *Nix v. Williams,* 467 U.S. 431, 443 (1984); *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005).

When there are two searches—an earlier illegal search and a later warrant search—evidence from the later search is from an independent source if the warrant application contains probable cause apart from the tainted information discovered during the first search. *Jenkins*, 396 F.3d at 757–58. When a warrant would have issued without the tainted information, invalidating that warrant would put the police in a worse positon than had they not presented the tainted information in the first place. *See id.* at 758. Assuming that the consent search of Hindy's apartment was unlawful, the question is whether application of the exclusionary rule to the evidence would put the police in the same, but not a worse, position than they would have been absent any misconduct. *Id.* at 757.

The key evidence discovered during the search at issue—sexually explicit footage of Nelson—was discovered in three places: on the camcorder seized by police during the consent search of Hindy's apartment, on a laptop turned over to police by Hindy two days after the first search, and on another laptop that was the product of a valid search warrant executed two years later at Allen's sister's residence. The camcorder footage was included in the affidavits supporting the warrant for the forensic search of the camcorder and laptop and the search warrant for Allen's sister's home. But excluding the camcorder footage, the warrant applications contained probable cause: the statements of Allen's victims made to police independent of the warrantless search of Hindy's apartment.

Before police set foot in Hindy's apartment, Hindy told police that she suspected Allen of pandering women for prostitution, selling drugs, and doing "bad things with young women." Allen's pattern of activities—leaving men with Nelson in the bedroom—corroborated her suspicions. Hindy also told officers that Allen had asked her to pose for pictures that he could

use for prostitution advertisements in the *Metro Times*. Both Hindy and Nelson indicated that Nelson was working for Allen as a prostitute.

Two of Allen's minor victims also gave statements supporting the 2012 search warrant of Allen's sister's home. Nelson told officers that Allen solicited her to work as a prostitute and videotaped her in sexually explicit positions when she was 17 years old. Another minor victim, identified as C.S., told a similar tale. She told the officers that Allen took her from Detroit to Atlanta where she worked as a prostitute. She also told police that Allen routinely videotaped himself and the girls he prostituted. But the police did not have to take the victims' word for it. They saw the footage for themselves. Another camcorder legally seized from a pawn shop contained numerous videos of Allen and "his girls" engaged in sexual activities and drug use, and videos of Allen's lectures on how to be a pimp. Allen also posted similar videos to his public YouTube channel, D'Nero's Player Show.

Whether or not Allen had a reasonable expectation of privacy, the evidence would have been discovered. Whether or not Hindy's consent was valid, the evidence would have been discovered. The evidence would have been discovered and admitted against Allen at trial whether or not the initial search of the bedroom occurred. Accordingly, the district court did not err in denying Allen's motion to suppress.

### B. Allen's Sentencing

Sentencing decisions are reviewed for abuse of discretion. *United States v. Schock*, 862 F.3d 563, 566 (6th Cir. 2017). All sentences must be procedurally and substantively reasonable. *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014). A sentence is procedurally unreasonable when the sentencing range is incorrectly calculated. *Schock*, 862 F.3d

at 566.  Both Allen and the government agree, for different reasons, that Allen's sentence is procedurally unreasonable and requires remand to the district court.  We do too.

The parties agree that the district court incorrectly applied a four-level enhancement for sadistic or masochistic conduct under U.S.S.G. § 2G2.1(b)(4).  This guideline provides for a four-level sentencing enhancement "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence."  U.S.S.G. § 2G2.1(b)(4).  When applying this enhancement, "a sentencing court must determine by a preponderance of the evidence that an image or material (1) depicts sexual activity involving a minor and (2) portrays conduct that would cause an objective viewer to believe—without regard to the undepicted circumstances of the sexual encounter—that the pictured activity is inflicting physical pain, emotional suffering, or humiliation on that minor."  *United States v. Corp*, 668 F.3d 379, 390 (6th Cir. 2012).  There is no dispute that the material triggering the sadism enhancement showed only adults.  Because the videos shown to the district court did not depict sexual activity involving a minor, the four-level § 2G2.1(b)(4) enhancement was incorrectly applied.

The government asks us to find that the sadism enhancement was incorrectly applied, not because the video involved only adults, but because "visual depictions can be considered in determining the adjusted offense level only if they were the basis of a count of conviction or if the depiction qualifies as relevant conduct under U.S.S.G. § 1B1.3."  Appellee Br. 21.  The government would have us extend the rule applied in *United States v. Schock* to the sentencing guideline at issue here.  In *Schock*, we evaluated the applicability of a different guideline: § 262.1(d)(1).  Guideline § 262.1(d)(1) instructs the district court to apply an enhancement when the offense involves the exploitation of multiple minor victims.  We analyzed whether the photographs of minor Victim 1 were conduct relevant to Schock's offense of conviction for

exploiting another minor victim only because the Guidelines told us to. Guideline § 262.1(d)(1) applies "if the *relevant conduct* of an offense of conviction includes more than one minor being exploited." *Schock*, 862 F.3d at 567 (emphasis in original); U.S.S.G. § 2G2.1. cmt. n. 7. The applicable enhancement in this case, § 2G2.1(b)(4), does not reference relevant conduct and we need not rewrite the Guidelines to include it here. Our published precedent holds that to apply the § 2G2.1(4) enhancement a sentencing court must determine that the material depicts sexual activity involving a minor. *Corp*, 668 F.3d at 390. It is undisputed that the material did not involve a minor. Thus, this enhancement was incorrectly applied.

The government also argues, for the first time on appeal, that Allen's sentencing range was miscalculated because the district court incorrectly grouped the counts related to Nelson under Guideline § 3D1.2(b) and did not apply an enhancement for exploiting minors on multiple occasions under Guideline § 4B1.5(b)(1). Without reaching the merits of those arguments, we remand for resentencing, and as we issue a general remand, the district court is not limited to a review of the sadism enhancement.

## III. CONCLUSION

We affirm the district court's denial of Allen's motion to suppress, vacate Allen's sentence, and remand to the district court for resentencing.