**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0365n.06

Case No. 17-2350

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 24, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| JAMES GABRIEL SMITH, | ) | |
| | ) | |
| Defendant-Appellant. | ) | **O P I N I O N** |

**BEFORE: SUTTON, McKEAGUE, and KETHLEDGE, Circuit Judges.**

McKEAGUE, Circuit Judge. James Smith pled guilty to sex trafficking a fourteen-year-old girl and received a sentence of 240 months. No doubt unhappy with the consequence of his actions, Smith contests the finding that he was competent, argues that his guilty plea was infirm, alleges his trial counsel was ineffective, and asserts the district court wrongly applied a sentencing enhancement for repeated and dangerous sex offenders. Finding no error, we affirm.

**I**

Smith's arguments span an extensive record, so we begin with a brief procedural overview and later will set forth additional facts relevant to each argument.

In July 2016, James Smith was indicted on three counts of conspiring to sex traffic fourteen-year-old S.A., sex trafficking of S.A., and being a felon in possession of a firearm. One

month later, a superseding indictment added a count against Smith for sex trafficking S.A. by force, threats of force, fraud, and coercion.

Motivated by Smith's attorney's concerns raised a few months later, the United States moved to examine Smith's competency and sanity. The district court swiftly granted the motion, and Smith was transferred to a federal medical center for evaluation. Nearly five months later, in April 2016, the court received the reports, ordered them released, and referred the matter to a magistrate judge for a competency hearing. The magistrate judge credited a prison psychologist's findings that Smith had "exaggerated and malingered" psychotic symptoms throughout his examination and was indeed competent to assist in his defense and stand trial.

So Smith signed a plea agreement. He appeared for his change of plea hearing, and the magistrate judge advised him that he faced at least ten years in prison. For reasons unexplained, the magistrate judge then continued the hearing for three weeks. Once the hearing resumed, Smith pled guilty to one count of sex trafficking minor S.A. After a minor modification to the factual basis contained in the plea agreement, the magistrate judge concluded that Smith's plea was made knowingly, voluntarily, and with an understanding of his rights.

Fast forward to judgment day. The United States argued that Smith should receive a five-level pattern-of-activity enhancement for engaging in prohibited sexual conduct with S.A. on multiple occasions. After reviewing the evidence, the district court overruled Smith's objection to the enhancement for engaging in multiple instances of prohibited conduct. The enhancement packed a punch—Smith's Guidelines range increased to 262 to 327 months. Even so, the district court sentenced Smith to 240 months' incarceration—22 months below the Guidelines range.

**II**

Smith argues that the district court erred each step of the way—from pre-trial to plea to sentencing—so we take each in turn.

**A**

Smith first argues that the district court erroneously found him competent. We review competency determinations for clear error. *See United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016).

At his competency hearing, Smith highlighted his troubled background to support his argument that he lacked competency. He was exposed to drugs in utero. He failed third grade despite placement in special education classes. He dropped out at age 14. He qualified for social security disability benefits because of his intellectual disabilities. He has never driven. He cannot spell. On occasion, he has suffered from delusions. And his own mother testified to her belief that he had significant intellectual difficulties and noted that he struggled with basic tasks; for example, he still lived with her and she continued to pick out his own clothes for him daily.[1] Smith cites all of this evidence, along with his low IQ scores, to argue that he is incompetent.

For its part, the United States primarily relied upon the testimony of Dr. Shawn Channell, the physician that had evaluated Smith for over two months. Dr. Channell, a forensic psychologist, has performed over 500 competency evaluations over eighteen years with the Bureau of Prisons. Dr. Channell discussed the items he considered, which included three full-scale IQ scores—ranging from 40 to 50—from when Smith was younger. Dr. Channell also administered a fresh IQ test, and Smith obtained a full-scale score of 60. This score, while higher than past scores, still

---

[1] Yet he was able to do other tasks, including cashing his own checks.

3

demonstrates significant impairment. But since an IQ score provides only one puzzle piece, Dr. Channell administered several additional tests.

During the Test of Memory and Malingering, Dr. Channell concluded Smith "was either completely guessing or knew the correct answer but deliberately chose the wrong one." Other tests bolstered the latter theory: in the Rey-15 memory test, Smith "feigned memory impairment"; in the Minnesota Multiphasic Personality Inventory II, Smith "invalidated" his own test "because of the exaggeration of the psychotic symptoms"; in the Inventory of Legal Knowledge, Smith "knew the right answer and deliberately chose the wrong answers"; in the Competence Assessment for Standing Trial for Defendants with Mental Retardation, Smith "was deliberately trying to appear more impaired than he really is."

In addition to objective measures, Dr. Channell's personal observations led him to believe that Smith "would provide information which used pretty sophisticated legal terminology and indicated a fairly sophisticated understanding of the process." Even so, Smith often claimed to not understand legal principles and words, only to use those principles and words appropriately. In other words, Smith was "clearly exaggerating" his memory impairment, "exaggerating or malingering completely psychotic symptoms," and making a "concerted effort to suggest . . . that he was incompetent and lacked knowledge that he, in fact, possesses."

To be sure, Smith produced ample evidence showing that he has faced significant intellectual challenges from birth. But intellectual disability does not equate to incompetency. "[T]he bar for incompetency is high[er]: a criminal defendant must lack either a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him." *United States v. Miller*, 531 F.3d

340, 350 (6th Cir. 2008). The court did not clearly err when he credited Dr. Channell's testimony that Smith was competent.

**B**

Smith next avers that he did not understand the interstate commerce nexus element of his crime or his sentencing exposure. He argues that "the piecemeal and incomplete advisement was incomplete under Rule 11 and thus constitutionally inadequate." We review de novo whether a defendant's plea is knowing, voluntary, and intelligent, though we review underlying factual bases for clear error. *United States v. Catchings*, 708 F.3d 710, 716 (6th Cir. 2013) (citing *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007)). However, where a defendant fails to object "contemporaneously" to the district court's alleged failure to comply with Rule 11, we review for plain error. *United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005).

Smith concedes that we should review his interstate-commerce argument for plain error. That makes a difficult argument nearly impossible. The information required to satisfy a "factual basis" requirement for a guilty plea is lower than that required to sustain a guilty verdict at trial. *See United States v. Mobley*, 618 F.3d 539, 547 (6th Cir. 2010); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (noting the requirement is not grounded in the Constitution, "but rather a requirement created by rules and statutes"). Smith acknowledged that he understood the interstate-commerce element multiple times. Among other interstate tools, he used a vehicle manufactured in Ontario and carried a gun manufactured in Connecticut to sex traffic a minor. *Cf. United States v. Willoughby*, 742 F.3d 229, 240 (6th Cir. 2014) (holding that condoms and clothes manufactured out-of-state and cell-phone use sufficed to establish interstate nexus for sex trafficking conviction). Any alleged error could not have been plain to the judge accepting Smith's plea.

Regarding his sentencing exposure, there is no question that the court satisfied Rule 11 and constitutional requirements. When Smith was asked whether he understood that he faced at least ten years and up to life in prison, he replied "yes." Indeed, Smith admits that the court "gave all the most critical advisements on the constitutional trial rights that Smith was waiving and the penalties he was facing at the earlier hearing on June 15, 2017." Yet he faults the court because it advised him over two dates, with a three-week continuance in between. This did not suffice, he now says, because the court "never revisited" all its prior advisements on the later date when it formally accepted Smith's guilty plea.

We note that Smith's trial counsel expressly agreed with the court's plan to "pick up right where we left off" at the second session. But even assuming we review this issue de novo, nothing in the record leads us to conclude that Smith's plea was anything but knowing, voluntary, and intelligent. It may be a better practice to give all advisements on the same day. However, Smith cites no authority holding that a continuance requires the court to revisit what a defendant has acknowledged before. Smith indicated he understood his sentencing exposure two times in writing and two more times on the record. We reject Smith's shot at forgotten history.

## C

Smith also argues that the district court failed to make any factual findings when it applied a five-level enhancement for Smith's "pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b)(1).[2] In this context, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Corp*, 668 F.3d 379, 391 (6th Cir. 2012).

---

[2] Like Smith, we focus exclusively on the third requirement of § 4B1.5(b)(1).

Rather than contend with whether the record supports the enhancement—it clearly does—

Smith says the court failed to make "express finding[s]." At first blush, Smith's argument appears

to gain traction. Smith cites a portion of the record where the district judge stated:

> The next objection is the offense of convictions. The[] covered sex crime, neither
> 4B1 career offender nor subsection 4B1.5 applies and defendant engaged in a
> pattern of activity involving prohibited sexual conduct. Therefore, the defendant is
> a repeat and dangerous sex offender against minors. Offense level shall be five
> plus the offense level determined in chapters two and three.

In isolation, this is not very explicit. However, we first must ask whether any "evidence beyond a

bare denial" called into question the factual allegations contained in the PSR and the testimony

received at sentencing. *See United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (internal

citation and quotation marks omitted). The answer here is no. At sentencing, Smith's counsel

merely averred that Smith "has never admitted to participating more than that one time so he has

a factual disagreement with that enhancement."[3]

Contrast this threadbare assertion with the evidence contained in the PSR and offered at

Smith's sentencing hearing: S.A. testified before the grand jury that Smith forced her to go on "a

bunch" of sex dates; a co-defendant proffered evidence about at least two sex dates; two text

messages and three voicemails recovered from Smith's cell phone showed other people inquiring

about engaging in paid sex with S.A.; and, to make matters worse, a voice memo recorded Smith

himself stating that S.A. was "sick" from "all that sex . . . ." Faced with this mountain of evidence

and a "bare denial" to the contrary, the district court appropriately adopted the PSR's findings and

credited the government's evidence and argument at sentencing.

But even if Smith had offered more than a "bare denial" sufficient to require the district

court to make more express factual findings, the court did just that. At one point, the court found

---

[3] In reality, Smith admitted to trafficking on "*at least* one trip," an important distinction.

Smith "threatened physical violence against S.A. if she did not go on sex dates," "ke[pt] her involved with this prostitution," and gave her "cocaine to do it." The court lamented Smith's pattern as "despicable by any standard": "He would rent hotel rooms for these so-called sex dates and he also physically abused the young girl who he was using and forced the young girl, S.A., to have sex with him, which I do believe." Smith's assertion that he transgressed just "one time" is brazen, to say the least. Remanding for further explanation would produce a result as certain as death and taxes. *Cf. Molina-Martinez v. United States*, 136 S. Ct. 1338, 1348 (2016) (noting the discretion afforded to courts of appeals "in determining whether a remand for resentencing is necessary"); *accord Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018).

Finally, due to its very nature, sex *trafficking* of a child or children usually (and tragically) involves more than just a "one-time" act. Being convicted of this offense often means "the defendant engaged in a pattern of activity involving prohibited sexual conduct" and thus often triggers the enhancement for repeated and dangerous sex offenders. *Compare* 18 U.S.C. § 1591(a)(1)–(2) *with* U.S.S.G. § 4B1.5(b)(1). The district court appropriately applied the pattern-of-activity enhancement in this case.

**D**

At last, Smith argues that his trial counsel was ineffective. His trial counsel, he says, failed to ensure he understood his sentencing exposure and failed to object to the interstate-commerce element during his plea hearing. "Except in rare circumstances" not present here, "this Court does not review ineffective assistance of counsel claims on direct appeal." *United States v. Sypher*, 684 F.3d 622, 626 (6th Cir. 2012) (internal citation and quotation marks omitted). Smith instead may pursue a claim in a collateral proceeding under 28 U.S.C. § 2255. *See United States v. Walden*, 625 F.3d 961, 967 (6th Cir. 2010).

## III

For the foregoing reasons, we affirm.