In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2240

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JERMAINE L. JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 13 CR 018— **Rudolph T. Randa**, *Judge.*

ARGUED JANUARY 8, 2015 — DECIDED APRIL 20, 2015

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Jermaine L. Johnson pleaded guilty to one count of production of child pornography, *see* 18 U.S.C. § 2251(a), and one count of possession of child pornography, *see* 18 U.S.C. § 2252(a)(4)(B). At sentencing, the parties disputed whether several photographs showing Johnson's twelve-year-old victim inserting foreign objects into her vagina were sadistic or masochistic. *See* U.S.S.G. § 2G2.1(b)(4). The court

concluded over Johnson's objection that one of the photographs warranted the four level upward adjustment for sadistic or masochistic images. On appeal, Johnson contends that the district court erroneously enhanced his sentence under § 2G2.1(b)(4). Although our reasoning is slightly different than that of the district court, we affirm.

I.

While Johnson was on probation for a previous conviction for second degree assault of a child in Waukesha County, Wisconsin, his probation officers Jacob Leannais and Rebecca Lesada discovered evidence suggesting that he may have reoffended. Specifically, Agent Leannais found over 3,000 photos on Johnson's phone. Most of the photos were sexually explicit and Leannais believed several of the individuals pictured may have been minors. Agent Lesada had also received a tip from an individual who reported that Johnson had a Facebook account and was posting ads on Craigslist. Based on this information, Leannais and Lesada contacted Special Agent Eric Szatkowski from the Wisconsin Department of Justice to assist with their investigation of Johnson. Lesada then contacted Johnson and directed him to report to her office.

Although initially Johnson denied having violated his probation, he eventually admitted that he had a Facebook account, four e-mail accounts, and that he owned the phone with the sexually explicit photos. Subsequent searches of Johnson's car and his apartment led to the discovery of a cell phone, camera, and flash drive. These contained images of two minor females—identified as Minor Female A and Minor Female B—that Johnson had met on MySpace and Facebook.

Johnson connected with Minor Female A in July 2009, when she had just turned twelve years old. Johnson identified himself on MySpace with the username "DA photographer." After Johnson chatted online through MySpace with Minor Female A, he added her as a "friend" and they exchanged telephone numbers and photos of one another. Johnson told the girl that he was twenty-three years old (he was in fact thirty-three at the time), and she falsely claimed to be fifteen as opposed to twelve (her birthday had been just three weeks before). Johnson began asking her to meet him and also instructed her to take various explicit photographs of herself and text the pictures to him. Although she protested that his requests made her feel "stupid," Minor Female A proceeded to take and send photographs of herself inserting her finger into her vagina and also inserting a highlighter and the handle of a screwdriver into her vagina. Johnson responded by sending Minor Female A a photo of his erect penis.

Johnson also persuaded Minor Female A to meet him. He picked her up from the bus stop at school and took her to a hotel in Milwaukee where the two engaged in various sex acts, including anal and vaginal intercourse. Agents recovered twenty-one images of Minor Female A on a thumb drive belonging to Johnson and on a personal computer hard drive that belonged to Johnson's girlfriend at the time.

Minor Female B was a tenth-grade student in Milwaukee who was contacted by Johnson on Facebook. He sent her a friend request and suggested that he take pictures of her at the Milwaukee lakefront. He then picked her up several times from her home and took photographs of her both at the lakefront and, ironically, at the group home for sex offenders

where he was living at the time. Agents recovered over 100 photographs from Johnson's cell phone in a file labeled with Minor Female B's name. Twelve of these images are naked photographs of the minor focusing primarily on her genitals.

Johnson ultimately pleaded guilty to one count of production of child pornography and one count of possession of child pornography. Pursuant to the plea agreement, the government dismissed the remaining count of the indictment for production of child pornography involving Minor Female B. Based on a total offense level of 36 and a criminal history category of III, the presentence investigation report ("PSR") calculated an advisory guidelines range of 235 to 293 months. This calculation included a four-level upward adjustment under U.S.S.G. § 2G2.1(b)(4) for material portraying sadistic or masochistic conduct or other depictions of violence. Specifically, the PSR recommended the application of § 2G2.1(b)(4) based on the photographs of Minor Female A inserting the screwdriver and highlighter into her vagina. At sentencing, the parties focused on whether the photograph with the screwdriver should be considered sadistic or masochistic.

The probation officer who prepared the PSR recounted that Johnson told the victim to get a screwdriver and insert the handle into her vagina. At the preliminary hearing in Waukesha County, however, the victim testified only that Johnson asked her to take pictures of herself and also asked her to "do certain things" in some of the photographs. When asked if Johnson specifically asked her to take pictures "depicting any kind of objects" the victim testified, "I did [that] on my own." The district court did not resolve the factual discrepancy as to whether the victim took the pictures with the screwdriver and

highlighter at Johnson's request or on her own initiative. Instead, the court noted that her testimony at the preliminary hearing should be considered in the "context of a courtroom setting where the Defendant was present." The court further opined that it was questionable whether a twelve-year-old would be "of a mind to be clear" as to what she had done voluntarily. The court ultimately deemed it irrelevant whether Johnson requested those specific images or not given the undisputed fact that Johnson had admittedly employed, used, persuaded, induced, enticed, and coerced the victim's participation.

Johnson argued at sentencing that as distasteful as the photograph was, it did not rise to the level of a sadistic, masochistic, or violent depiction under the relevant case law, which generally considered circumstances where the adjustment more obviously applied, such as images depicting bondage or the obvious infliction of pain. Here the district court accepted as a factual matter that the screwdriver "was not a size sufficient to cause pain." The court then noted that physical pain was not required for the application of § 2G2.1(b)(4) if the image portrayed humiliating and degrading conduct. The district court stated that "in the whole animal kingdom, only human beings—in the whole animal kingdom there's only one purpose of the vagina. At least in the animal kingdom, besides the human animal, besides the human animal. And that's for the insertion of a penis. And as explained by the defense, in the case of a young lady who has reached that time in her life where she has to use something like a tampon." From this the court reasoned that any object being used sexually for something other than its intended

purpose was "abnormal." The district court went on to conclude that the victim's comment that she felt "stupid" doing the things Johnson asked demonstrated that it was an act of humiliation and degradation. The court further based its conclusion on the fact that twelve-year-olds are vulnerable, emotionally unstable, and generally not capable of thinking for themselves. The court determined that the adjustment was appropriate because anyone seeing a picture of a twelve-year-old inserting the handle of a screwdriver into her vagina would think "God that's disgusting. How humiliated, how degraded does one have to be to do that?" Given Johnson's calculating manipulation of the victim, the district court opined that the image was humiliating and degrading and that § 2G2.1(b)(4) applied.

The court sentenced Johnson to 240 months' imprisonment, a sentence at the low end of the 235 to 293-month range. The court also imposed supervised release for life. Johnson appeals, challenging only the court's application of § 2G2.1(b)(4).

## II.

Johnson argues that the district court erred by applying § 2G2.1(b)(4) because the photograph was neither sadistic, masochistic, nor violent as required by the guideline. Johnson acknowledges that the photograph, like all child pornography, is distasteful, inappropriate, and offensive. He claims, however, that qualitatively it is no more degrading or humiliating to the victim than child pornography generally, and therefore does not rise to the level of inherently cruel, degrading, or sadistic behavior that would support the § 2G2.1(b)(4) enhancement. He also takes issue with the district court's assessment

that the photograph was sadistic in part because the victim reported feeling "stupid" about it.

We review the district court's interpretation of the sentencing guidelines de novo, and its findings of fact for clear error. *See, e.g.*, *United States v. Fletcher*, 763 F.3d 711, 715 (7th Cir. 2014). Section 2G2.1(b)(4) simply instructs the district court to increase the base offense level by four levels "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." When interpreting the guidelines, courts must begin with the text of the provision and the plain meaning of the words in the text. *See United States v. Turchen*, 187 F.3d 735, 739 (7th Cir. 1999). Undefined guideline terms that do not have a common law meaning are given their ordinary meaning. *Id.* The district court relied on *Turchen*, where we recognized that the ordinary dictionary definitions of sadism and masochism make clear that violence and physical pain and suffering are not a prerequisite for sadistic or masochistic conduct. *Id.* (Noting that sadistic and masochistic conduct includes "sexual gratification which is purposefully degrading and humiliating" and that "violence is not necessarily found in such conduct."); *see also United States v. Raplinger*, 555 F.3d 687, 694 (8th Cir. 2009) ("[Section 2G2.1(b)(4)] applies to material *depicting* sadistic, masochistic, or violent conduct even if those pictured were not truly engaging in painful activities.") (emphasis in original); *United States v. Starr*, 533 F.3d 985, 1001 (8th Cir. 2008) (rejecting defendant's argument that victim must suffer "pain or injury" in order for masochism enhancement to apply). The Oxford English Dictionary defines sadism as "[e]nthusiasm for inflicting pain, suffering, or humiliation on others; spec. a

psychological disorder characterized by sexual fantasies, urges, or behaviour involving the subjection of another person to pain, humiliation, bondage, etc." (Third ed. Mar. 2008). It defines masochism as "The urge to derive pleasure, esp. sexual gratification, from one's own pain or humiliation; the pursuit of such pleasure." *Id.* Given that Johnson responded to the image in question by sending the victim a photograph of his erect penis, it is undisputed that he derived sexual pleasure from the image.

After noting that sadistic and masochistic conduct may include purposefully humiliating or degrading depictions, the district court focused on whether this image depicted an act that would be "humiliating and degrading to a just-turned 12 year old." Because the court concluded that the screwdriver did not necessarily cause the victim pain, it focused solely on whether the depiction was humiliating and degrading. In concluding that it was, the district court focused on the victim's statement that she felt "stupid" about taking the pictures Johnson requested. The district court extrapolated from the victim's statement that it was "a degradation" and "a humiliation" because she was used and persuaded to take the photographs.

Johnson asserts that by improperly focusing on the victim's subjective emotions instead of whether the image would be objectively considered degrading or humiliating to the point that it would be recognized as sadistic, the court's analysis would subject almost any defendant who had created child pornography to the upward adjustment.

We agree with Johnson that given the language of the guideline, the proper question is whether the image itself would be objectively considered sadistic. *See Raplinger*, 555 F.3d at 695 (noting counsel's concession that "the guideline applies to what the material portrays rather than what the victim experiences"). Once physical pain or suffering is taken from the equation, it would be a slippery slope if courts inquired in each instance whether *a particular victim* felt degraded. Indeed, presumably any victim of child pornography has been humiliated and degraded to an extent. We thus focus on whether a depiction of a young girl inserting the handle of a screwdriver into her vagina would be considered objectively sadistic in nature.

Given the age of the victim and the potentially violent connotations readily associated with a workshop tool such as a screwdriver, we conclude that the district court did not err by imposing the four-level increase under § 2G2.1(b)(4). The Eighth Circuit has recognized that images depicting the insertion of a foreign object into a minor's genitalia are likely to be sadistic or masochistic in nature. In *Starr*, the panel rejected the defendant's contention that § 2G2.1(b)(4) did not apply in circumstances similar to the one here with one noteworthy distinction—the victim was seventeen as opposed to barely twelve. 533 F.3d at 990, 1001. The defendant in *Starr* had asked the victim to take video photos and video footage of herself, *id.* at 990. The victim had thereafter created a video chronicling her daily life that also showed her masturbating and "performing anal penetration." *Id.* On appeal, the defendant objected to the upward adjustment for masochism, arguing that there was no evidence that the victim had

experienced any pain or injury. He also attempted to distinguish previous cases applying § 2G2.1(b)(4) involving "penetration by a foreign object" as inapplicable because his victim was seventeen years old as opposed to a young child. *Id.* The Eighth Circuit rejected these arguments as unpersuasive. In doing so, *Starr* relied on *United States v. Parker*, 267 F.3d 839 (8th Cir. 2001), where the court considered images depicting, among other things, "sexual penetration by a minor girl upon herself by using a large carrot," *id.* at 847. The court in *Parker* noted that "[g]iven the plain meaning of 'violence,' it is difficult to imagine that the sexual penetration with a foreign object of a minor female would not qualify as 'violence' even if self-inflicted," *Id.* We would not go so far as the Eighth Circuit in suggesting the self-penetration by a minor of a foreign object would *always* be violent or sadistic. As Johnson points out, certainly there are circumstances where self-penetration by a foreign object would be within the realm of sexual exploration or self-pleasuring—it is certainly not our place to opine on the varied and creative sexual proclivities of even minor individuals. Nor do we countenance the district court's commentary opining that the sole purpose of the vagina is for the insertion of the penis. Indeed, among the other potential purposes for the vagina, the indisputably significant purpose of childbirth comes to mind as but one example beyond "the insertion of the penis."

Notwithstanding this, we agree that on these facts the image connotes violence of a sort that would likely appeal to a sadistic audience. *See United States v. Hoey*, 508 F.3d 687, 691 (1st Cir. 2007) ("It follows that an image's portrayal of sadistic conduct includes portrayal of conduct a viewer would likely

think is causing pain to a depicted young child."). In short, the district court's conclusion that the victim may not have suffered any pain and the fact that she inserted the screwdriver herself do not preclude a finding that the image is nonetheless sadistic or violent in nature. In addition to its conclusion that the image depicted a degrading and humiliating act, the district court specifically found that Johnson "persuaded, induced, enticed, and coerced" the victim to take these photographs and he succeeded because he was very "clever," "careful," and "calculating." These factual findings support the notion that Minor Female A was not inserting a screwdriver into her vagina for her own pleasure, nor would she have conceived of doing such a thing had she not been manipulated and coerced by Johnson.

We thus conclude that an image of a young girl inserting a screwdriver into her vagina connotes a degree of potential pain and violence such that the upward adjustment under § 2G2.1(b)(4) is appropriate. A screwdriver is ordinarily used in a workshop setting for applying force with a sharp and potentially dangerous point. Although the district court focused on humiliation and degradation, we are less certain that this particular image would be universally considered degrading. The district court relied on *Turchen*, 187 F.3d at 737, where we concluded that although it did not necessarily depict pain, an image of individuals urinating on a minor victim's grimacing face were undoubtedly purposefully degrading and humiliating under § 2G2.1(b)(4). The image here may fall short of the sort of excessive cruelty and humiliation depicted in *Turchen*, but it carries a sufficient connotation of violence and cruelty that the district court did not err by applying the

§ 2G2.1(b)(4) enhancement for images portraying sadistic conduct or other depictions of violence. *Cf. id.* at 740 (noting that violent conduct is unnecessary and § 2G2.1(b)(4) applies when image portrays physical and mental harm or excessive cruelty).

### III.

For the foregoing reasons we AFFIRM the judgment of the district court.