RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0321p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 24-6126

JONATHON CHASE VOWELS-HARPER,

*Defendant-Appellant*.

─────────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:21-cr-00124-1—David J. Hale, District Judge.

Argued: July 30, 2025

Decided and Filed: November 25, 2025

Before: CLAY, GILMAN, and BLOOMEKATZ, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Michael R. Mazzoli, COX & MAZZOLI PLLC, Louisville, Kentucky, for Appellant. Amanda E. Gregory, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee. **ON BRIEF:** Michael R. Mazzoli, COX & MAZZOLI PLLC, Louisville, Kentucky, for Appellant. Amanda E. Gregory, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

BLOOMEKATZ, J., delivered the opinion of the court in which GILMAN, J., concurred. CLAY, J. (pp. 16–21), delivered a separate dissenting opinion.

―――――――――――

**OPINION**

―――――――――――

BLOOMEKATZ, Circuit Judge.   Jonathon Chase Vowels-Harper was a young adult when he met a minor girl on social media.  The two began to exchange casual text messages, but their conversations soon turned sexual. Vowels-Harper asked the minor to send him sexually explicit photos and videos of herself, and she did.  He later pleaded guilty to receiving child pornography based on that conduct.   At sentencing, the district court applied a four-level enhancement on the ground that one of the videos of the minor depicted "sadistic" conduct. Vowels-Harper argues that the court applied the wrong standard in evaluating the video for the sadism enhancement.  We agree, so we vacate his sentence and remand for resentencing under the proper standard.

**BACKGROUND**

Jonathon Chase Vowels-Harper, an autistic man, was 20 years old when he met "Jane Doe" on a social media platform.  Doe, who was twelve years old at the time, told Vowels-Harper that she was thirteen.  At first, Vowels-Harper and Doe exchanged casual texts.  But within a month or so, their conversations became sexual.  Vowels-Harper asked if Doe had breasts and pubic hair, and she said that she did.  He also asked when Doe first started masturbating, and Doe replied that she had been doing so for a couple of years.

Around the same time, Vowels-Harper and Doe began to trade sexually explicit content with each other.  At Vowels-Harper's requests, Doe sent him photos and videos that showed her either nude or masturbating.  Relevant here, Vowels-Harper once asked Doe to record herself "smiling" while showing her breasts.  PSR, R. 126, PageID 702–03.  When Doe agreed, he asked her to also "play" with and "stick the remote in" her vagina.  *Id.*  When Doe said that she did not have the remote he was referring to, Vowels-Harper asked if she had "any other toys."  *Id.* at PageID 703.  Doe said she had a marker, and Vowels-Harper said, "Okay use that."  *Id.*  Doe then recorded a 35-second video and shared it with Vowels-Harper.

The parties do not dispute what the video shows. They agree that in the video, Doe stands "fully nude" and "repeatedly inserts what appears to be a marker inside her vagina." Appellant Br. at 24 (quoting PSR, R. 126, PageID 703); Appellee Br. at 3 (same). They also agree that Doe was pubescent at the time. The government "concedes" that the video shows Doe with "fully-developed breasts and pubic hair." Appellee Br. at 15. It also "acknowledges there is no point in the video in which the expression on [Doe]'s face is particularly pained." *Id.* at 16. For his part, Vowels-Harper adds a few more details about the video. He describes Doe as "fully pubescent," "almost adult-appearing." Appellant Br. at 24. He says in the video, Doe "mov[es] her hand vigorously, not tentatively." *Id.* And he states that Doe's "body does not flinch or recoil as she masturbates." *Id.* The government neither explicitly concedes nor denies Vowels-Harper's description.[1]

Five months into their communications, Doe reported Vowels-Harper to law enforcement. Posing as Doe, police investigated Vowels-Harper. They led him to believe that Doe wanted to meet him for sex at a hotel and arrested him when he arrived there.

A grand jury charged Vowels-Harper with various sex-related crimes. Vowels-Harper pleaded guilty to receiving child pornography, 18 U.S.C. § 2252A(a)(2), enticing a minor to engage in illegal sexual activity, *id.* § 2422(b), and attempting to transfer obscene material to a minor, *id.* § 1470.

For sentencing, the presentence report (PSR) calculated a recommended Guidelines range for the district court to consider. The PSR grouped Vowels-Harper's three offenses for Guidelines purposes, then focused on his receipt of child pornography, the crime with the highest offense level. Because Vowels-Harper had "caus[ed]" Doe to create child pornography, the Guidelines treated his offense as one involving production rather than receipt. *See* U.S.S.G.

---

[1]Given the undisputed facts here, the conduct in the video may be described as either "penetration" or "masturbation." Those two terms have overlapping but not coextensive meanings. *Compare Penetration*, Oxford Eng. Dictionary, https://perma.cc/QU48-TPBG ("The insertion of the penis, or a penis-like object, into the vagina or anus . . . ."), *with Masturbation*, Oxford Eng. Dictionary, https://perma.cc/Y4U7-TJCV ("The stimulation, usually by hand, of one's genitals for sexual pleasure . . . ."). They also carry different connotations. Describing an act as "penetration" implies force, while describing it as "masturbation" does not. Here, we alternate between the two terms, attempting to choose whichever is clearer and more precise in context. But our analysis is based on the undisputed facts, not on the connotations these terms might carry.

§ 2G2.2(c)(1).  That reclassification yielded a base offense level of 32 (as opposed to 22 for receipt).  *See id.* §§ 2G2.2(a)(2), 2G2.1(a).  To that base level, the PSR added two levels because Doe was twelve years old, *id.* § 2G2.1(b)(1)(B), two levels because the offense involved self-masturbation by a minor and thus "sexual contact," *id.* § 2G2.1(b)(2)(A), and another two levels because the offense involved the use of a computer, *id.* § 2G2.1(b)(6).  Based on video of Doe "self-penetrat[ing]" with a marker, the PSR also applied a four-level enhancement for materials that depict "sadistic or masochistic conduct."  *Id.* § 2G2.1(b)(4)(A).  After reducing three levels because Vowels-Harper accepted responsibility, the PSR arrived at a 39-point total offense level. This, combined with Vowels-Harper's criminal history category of I, resulted in an advisory range of 262–327 months' imprisonment.

Vowels-Harper objected to the four-level sadism enhancement.  Without that enhancement, his advisory range would have been 168–210 months, roughly eight to ten years lower than the PSR's recommended range.  *See id.* § 5A.  Vowels-Harper explained that Doe was pubescent, so he argued to the district court that it would be inappropriate for the court to apply the rule that sexual penetration of a prepubescent minor is per se sadistic.  He further contended that the video did not depict "violence or the infliction of pain," as required by our precedents.  Sent'g Tr., R. 122, PageID 674.  The district court determined that it could not resolve the objection without viewing the video.  It thus adjourned the sentencing hearing until it had a chance to do so.

After reviewing the video in camera, the district court overruled Vowels-Harper's objection.  Quoting from our unpublished decision in *United States v. Preston*, the district court held that, as a matter of "'[c]ommon sense,' . . . images 'of a middle- and high-school aged girl inserting [foreign] objects into her private parts are sadistic.'"  Order, R. 127, PageID 728 (alterations in original) (quoting *United States v. Preston*, No. 23-5675, 2024 WL 4590865, at *4 (6th Cir. Oct. 28, 2024)).  The court then observed that the video showed Doe "inserting an 'everyday object[] into her private parts.'"  *Id.* (quoting *Preston*, 2024 WL 4590865, at *5).  On that basis, the court ruled that the sadism enhancement applied.

Vowels-Harper also requested a substantial downward variance in his sentence based on his autism diagnosis.  He argued that his autism resulted in significant developmental

immaturity, and that his immaturity diminished his moral culpability. The district court varied Vowels-Harper's sentence down by 36 months based on his immaturity and young age. But it found Vowels-Harper's evidence insufficient to show that he did not understand the wrongfulness of his conduct, so it declined to vary down further. After factoring in the variance, the district court sentenced Vowels-Harper to 226 months' imprisonment and 25 years of supervised release.

Vowels-Harper now appeals his sentence.

## ANALYSIS

Vowels-Harper contends that his sentence is both procedurally and substantively unreasonable. Because we hold that the sentence was procedurally improper, we do not reach Vowels-Harper's arguments as to substantive reasonableness. *See United States v. Thomas-Mathews*, 81 F.4th 530, 541 (6th Cir. 2023). Instead, we focus our analysis on his claim that the district court misapplied the sadism enhancement and thus miscalculated his Guidelines range, rendering his sentence procedurally unreasonable.

We review challenges to the procedural reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). In doing so, we review the court's legal determinations de novo and its factual findings for clear error. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). Procedural reasonableness requires that, as relevant here, the court properly calculate the Guidelines range. *Gall*, 552 U.S. at 51.

Vowels-Harper's procedural challenge raises three questions: *First*, what is the correct legal standard for determining whether the sadism enhancement, U.S.S.G. § 2G2.1(b)(4), applies in this case? *Second*, did the district court apply that standard? And *third*, if so, did the court correctly conclude that the video at issue here satisfied the standard? We resolve only the first two questions and conclude that Vowels-Harper's sentence was procedurally unreasonable. We remand for the district court to resentence Vowels-Harper under the standard that we clarify (while harmonizing our past cases) in this decision.

## I.        Applicable Legal Standard

In child pornography cases, the Guidelines provide for a four-level enhancement if the material portrays "sadistic or masochistic conduct or other depictions of violence."   U.S.S.G. § 2G2.1(b)(4)(A).   The Guidelines do not define "sadistic," "masochistic," or "depictions of violence."   *See United States v. Groenendal*, 557 F.3d 419, 425 (6th Cir. 2009).   So we have had to interpret these terms and develop standards through our caselaw, which we turn to first.

### A.        Background Precedents

Our earliest cases on this enhancement addressed materials that depicted the sexual penetration of prepubescent minors.  *See United States v. Fuller*, 77 F. App'x 371, 384 (6th Cir. 2003); *United States v. Quinn*, 257 F. App'x 864, 866–67 (6th Cir. 2007); *Groenendal*, 557 F.3d at 425.   In those decisions, we focused on defining what counts as "sadistic" conduct for purposes of the enhancement.  Looking to the term's common meaning, we defined "sadistic" as the "infliction of pain upon a love object as a means of obtaining sexual release."  *United States v. Corp*, 668 F.3d 379, 388 (6th Cir. 2012) (quoting *Groenendal*, 557 F.3d at 425).   We then joined eight other circuits in holding that images showing the sexual penetration of a prepubescent minor are per se depictions of "sadistic" conduct.  *Id.* at 425–26.  We reasoned that, given a prepubescent child's size, sexual penetration is likely to be painful for a prepubescent minor.  *See id.*   And we applied this reasoning equally to penetration by male anatomy and penetration by a foreign object.  *Quinn*, 257 F. App'x at 867; *Fuller*, 77 F. App'x at 384; *United States v. Caldwell*, 181 F.3d 104 (6th Cir. 1999) (table).   We have since adhered to this per se approach for materials that depict the sexual penetration of prepubescent minors.  *E.g.*, *United States v. Overby*, 838 F. App'x 966, 968 (6th Cir. 2021).

We have also considered—though far less often—the enhancement's application to materials that depict the sexual penetration of *pubescent* minors.  We first confronted this issue in *United States v. Corp*.  In *Corp*, the defendant had photographed a sexual encounter with a fifteen-year-old.   668 F.3d at 382–83.   Some of the images showed the defendant's penis "penetrating [the minor's] mouth."  *Id.* at 383.   Others showed the minor's face with the defendant's ejaculate on it.  *Id.*   Until then, our precedents on § 2G2.1(b)(4) had all involved

materials that depicted the sexual penetration of prepubescent minors. But the minor in *Corp* was pubescent, so we took the opportunity to lay out a more "comprehensive framework" for the enhancement's application. 668 F.3d at 388, 390.

We began by defining the enhancement's three main terms: "[1] sadistic or [2] masochistic conduct or [3] other depictions of violence." U.S.S.G. § 2G2.1(b)(4)(A). We reaffirmed our existing definition of "sadism"—the infliction of pain upon another as a means of sexual gratification—but broadened it to include "physical *or mental* pain." *Corp*, 668 F.3d at 388. We then defined masochism as "a sexual perversion characterized by pleasure in being subjected to pain or humiliation." *Id.* at 389 (citation omitted). Finally, we read "other depictions of violence" narrowly, limiting it to materials like those encompassed by the more specific terms "sadistic or masochistic." *Id.*

We held that whether an image meets these definitions turns on a two-step inquiry. *Id.* at 390. A district court must find by a preponderance of the evidence that the material (1) depicts sexual activity involving a minor and (2) portrays conduct that an objective viewer would perceive as inflicting "physical pain, emotional suffering, or humiliation on the minor." *Id.* This inquiry is strictly objective. As we explained in *Corp*, it depends on the conduct portrayed "within the four corners of the image." *Id.* at 389. Courts may not consider other undepicted factors, like the individual's subjective experience or the context surrounding the image's creation.[2] *Id.*

In establishing this general framework for § 2G2.1(b)(4)'s sadism enhancement, *Corp* also foreshadowed how it would apply: It would be "straightforward" in some cases, but it would often defy bright-line rules given its "inherently fact-based nature." *Id.* at 390–91. For straightforward cases, we pointed to our established rule that images depicting the "sexual penetration of prepubescent children" are per se sadistic because they depict an act "that is likely to cause pain in one so young." *Id.* (citation omitted). Depictions of bondage are another

---

[2] We share the dissent's concerns that young people suffer far more than what is depicted in a still photograph or video. *See* Dissenting Op. at 17–18. But this particular enhancement instructs us to look to what the material "portrays," U.S.S.G. § 2G2.1(b)(4), not what it fails to capture, so our precedent limits us to the "four corners" of the image, *Corp*, 668 F.3d at 389.

straightforward example. Because bondage objectively connotes sadomasochism "even if engaged in by consenting adults," materials that depict bondage also easily satisfy *Corp*'s standard. *Id.* For cases that are not so straightforward, *Corp* explained that evaluating the images "often involves a case-by-case determination." *Id.* at 391.

But *Corp* did not leave us without guidance on how to conduct § 2G2.1(b)(4)'s "inherently fact-based" inquiry. As an initial matter, it reasoned that when an image involves pubescent minors, the depiction of "ordinary sexual intercourse" is not automatically enough to justify the enhancement since that depiction simply establishes the base offense level. *Id.* at 390. That was the case for some of the images in *Corp*, which depicted the pubescent minor performing oral sex on the defendant. *Id.* at 385. But there were other images that depicted the minor with semen on her face. *Id.* The question, therefore, was whether an objective viewer would find that those images portrayed sadism. *Id.* In evaluating whether such images were objectively sadistic, we pointed to multiple factors to consider. For instance, we stressed that the minor in that case was pubescent. *Id.* at 390. There was no bondage. *Id.* The minor's "expression" did not "seem to convey what could objectively be perceived as a manifestation of humiliation or disgust." *Id.* And the images did not depict the activity the government identified as "degrading and humiliating"—the defendant ejaculating onto the minor's face—but rather showed its result. *Id.* at 390–91 (citation omitted). Because the district court had erroneously relied on undepicted facts in applying the enhancement, we remanded so the district court could reconsider the images under the proper objective standard. *Id.* at 391.

A few years later, we faced a similar fact pattern in *United States v. Cover*. 800 F.3d 275 (6th Cir. 2015) (per curiam). *Cover* involved a video that depicted a minor, who was between the ages of eleven and thirteen, performing oral sex on a man. *Id.* at 279. The district court applied the enhancement based on the video, reasoning that oral sex with a minor is "sadistic or masochistic as a matter of law." *See id.* (citation omitted). We disagreed and reversed.

We explained that the government has "two ways" to show that an image portrays sadism. *Id.* at 280. One, it can offer evidence that the image depicts the sexual penetration of a prepubescent minor, in which case the image per se qualifies for the enhancement. *Id.* Two, it can offer evidence that the image otherwise depicts the infliction of physical or mental pain. *Id.*

Put differently, to qualify as sadistic, an image must depict a minor who is either "visibly pained or prepubescent." *Id.* Neither of these findings, we explained, can rest on broad generalizations. *See id.* at 280–81.

Yet the record in *Cover* provided no basis other than broad generalizations for applying the enhancement. The record presented two facts in support of the enhancement: that the minor was at most thirteen years old and that she had performed oral sex on a man. *Id.* at 280. But we held that these two facts alone could not meet the definition of sadism. We rejected the notion that minors between the ages of eleven and thirteen are "even presumptively," "let alone always," prepubescent. *Id.* at 281. We also held that, contrary to the district court's reasoning, oral sex with a pubescent minor can be, but is not always, sadistic. *Id.* at 280. We thus remanded so the district court could consider the material under the proper standard. *Id.* at 281. In doing so, we stressed that all child pornography is "harmful to the victim" and "deserving of harsh punishment." *Id.* at 280. "But if the material does not portray sadism, then the punishment should not be increased on that basis." *Id.*

From these cases together, we can derive several helpful rules. *First*, *Corp* and *Cover* reject a per se rule for materials that depict the "sexual penetration" of pubescent minors. *Corp*, 668 F.3d at 390; *see also Cover*, 800 F.3d at 280–81. Instead, both require that the material "depict[] more than ordinary sexual intercourse with a [pubescent] minor" to qualify for the enhancement. *Corp*, 668 F.3d at 390; *see also Cover*, 800 F.3d at 280–81. *Second*, in cases involving pubescent minors, the enhancement must rest on specific facts rather than on broad generalizations. Specifically, courts may not rest on the generalization that all penetration of a pubescent minor is humiliating or painful. *See Cover*, 800 F.3d at 280–81. And *third*, those specific facts must appear on the face of the material and support an objective finding of mental or physical anguish. *Corp*, 668 F.3d at 390; *see also Cover*, 800 F.3d at 280–81.

None of this is meant to diminish the harm done to the minor victims of these crimes. The Guidelines and criminal code already accordingly increase the sentencing range based on a victim's age, the type of sexual conduct depicted, and other factors which doubtlessly implicate tremendous harms. *See, e.g.*, 18 U.S.C. § 2252A(b)(2); U.S.S.G. §§ 2G2.1(b)(1), 2G2.1(b)(2), 2G2.1(b)(4)(B). But the sadism enhancement targets portrayals of pain and humiliation of a

different degree than the already-serious base offense and other enhancements.  Because an enhancement definitionally cannot cover every course of conduct covered by a given crime, some acts will cause substantial harm to victims, yet nevertheless fail to rise to the level required to invoke the sadism enhancement.

### B.      Foreign Objects

In this case, we must address how these rules apply to a case where the image depicts penetration with a "foreign object"—here, a marker.  Beyond the penetration itself, the government does not point to any evidence of pain or humiliation.  The parties agree that Doe was pubescent at the time of the video in question, so we cannot rest on an assumption that any penetration would cause pain, as we do for prepubescent minors.  The government also "acknowledges there is no point in the video in which the expression on [Doe]'s face is particularly pained."  Appellee Br. at 19.  Nor does the government contend that Doe's body language otherwise suggests pain or humiliation.  Instead, the government focuses solely on the fact that Doe penetrated herself with a marker.  It asks us to adopt a rule that a minor's self-penetration with a foreign object is always sadistic, at least when it involves the use of a "household object[]" that is not "intended" for "sexual gratification."  Oral Arg. at 20:40–21:03.

To start, we reject a rule that all foreign-object penetrations of a pubescent minor are sadistic.  Such a rule would conflict with *Corp* and *Cover*—our only published precedents that address materials involving the sexual penetration of pubescent minors.  Although those cases did not specifically address penetration with a foreign object, they did refuse to extend the per se approach to "sexual penetration" when the minor is pubescent.  *Corp*, 668 F.3d at 390; *see also Cover*, 800 F.3d at 280–81.  And they spoke of "sexual penetration" broadly, without limiting it to only penile penetration.  Indeed, our earlier cases, cited by *Corp*, also used "sexual penetration" to mean penetration "by either an adult male or a foreign object."  *Quinn*, 257 F. App'x at 867 (citation omitted); *Fuller*, 77 F. App'x at 384.  In short, the most common-sense reading of *Corp* and *Cover*, applied to foreign-object penetration of pubescent minors, would require a fact-bound, case-by-case analysis.

Such a fact-bound approach makes sense here, just as it does in the context of penile penetration. As we explained in *Cover*, not all teenagers are the same in terms of their physical development. *See* 800 F.3d at 281 (rejecting a presumption that eleven- to thirteen-year-olds are necessarily prepubescent). While generally a fourteen-year-old might be less developed than a seventeen-year-old, that might not always be the case. And even among seventeen-year-olds (or any same-age teenage group), there can be substantial variations. Likewise, not all objects necessarily cause pain through penetration. A large or sharp object is more likely to cause pain than something small or pliant. *See United States v. Johnson*, 784 F.3d 1070, 1075 (7th Cir. 2015) (emphasizing a screwdriver's "sharp and potentially dangerous point"). And not all penetrative activity entails the same risk of pain or humiliation. An adult penetrating a minor with a foreign object, for example, is different from a minor masturbating with an object at her own direction. There are many other factors—such as sounds, facial expressions, body language, or humiliating and harmful props akin to bondage—that can affect how an objective viewer would perceive a particular image. We do not endeavor to create an exhaustive list of factors district courts should consider. But we emphasize that, although many depictions involving pubescent minors might meet *Corp*'s standard under these factors, not all of them will. And a one-size-fits-all rule would fail to account for those meaningful differences. A categorical rule would also mean that if a pubescent teenager penetrates herself with a foreign object, that would *always* be masochistic. But if a man penetrates the same teenager with his penis, his conduct would not be per se sadistic. *See Cover*, 800 F.3d at 281 (distinguishing prior cases that involved a "clearly prepubescent" victim). We decline to create such an anomaly in our doctrine.

The government responds that it is categorically worse for a teenager to masturbate with a household object—here, a marker—than it is for her to "merely engag[e] in sex" with an adult man. Oral Arg. at 20:57–21:04. As the government concedes, a marker is usually smaller than a penis, so it is not the object's size that makes the difference. Instead, the government contends that the distinguishing factor is the sexual use of an object that is not intended for sexual use. In the government's view, such conduct is always humiliating—even if it is not always physically painful—and thus qualifies for the enhancement. We disagree. The government would have us hold that it is worse for a pubescent minor to masturbate with a marker than it is for a man to

penetrate her or for her to have ejaculate on her face. *See Corp*, 668 F.3d at 390–91; Oral Arg. at 20:48–21:08. But we reject the notion that, as an objective matter, a minor masturbating with a marker is categorically worse than her experiencing an actual sex crime. *See, e.g.*, Ky. Rev. Stat. Ann. § 510.060 (defining statutory rape). In the end, our binding precedents reject broad generalizations about penile penetration and instead adopt a more fact-specific inquiry when the minor is pubescent. *Corp*, 668 F.3d at 390–91; *Cover*, 800 F.3d at 280–81. We see no compelling reason to depart from that approach simply because the penetrative object is a marker rather than a penis. As best as we can tell, most other circuits to have considered the issue have not adopted a categorical approach either. *See, e.g.*, *United States v. McGavitt*, 28 F.4th 571, 576 (5th Cir. 2022) (rejecting per se rule); *United States v. Johnson*, 784 F.3d 1070, 1075 (7th Cir. 2015) (same). *But see United States v. Starr*, 533 F.3d 985, 1001–02 (8th Cir. 2008) (adopting per se rule).

The government additionally argues that we applied a per se rule for household objects in our unpublished decision in *United States v. Preston*. No. 23-5675, 2024 WL 4590865, at *4 (6th Cir. Oct. 28, 2024). In *Preston*, the defendant deceived a thirteen-year-old girl into sending him explicit images. *Id.* at *1. He then threatened to disclose those images to her classmates if she did not send him more explicit content. *Id.* With that threat, he forced her to record herself penetrating her vagina with a hairbrush and her anus with a pencil. *Id.* at *4; Preston Br., *United States v. Preston*, No. 23-5675, 2024 WL 101859, at *4–5 (6th Cir. Jan. 2, 2024). The district court applied the sadism enhancement based on those recordings, and we affirmed. *Preston*, 2024 WL 4590865, at *4.

We do not interpret *Preston* as announcing a rule that all foreign-object penetrations of a minor are per se sadistic. To be sure, in *Preston*, we broadly stated that "inserting foreign objects into a child's body is objectively painful and humiliating." *Id.* at *5. But we did not say whether the victim was prepubescent, nor did we remark on any specific facts other than that the images depicted self-penetration with a hairbrush and pencil. *Id.* at *4. Likewise, the defendant did not focus on factual details either and did not argue that the victim was pubescent. *See* Preston Br., 2024 WL 101859, at *12–13. Critically, he did not argue that other details—like the victim's facial expression, body language, sexual acts, or use of particular props—suggested a

lack of pain or humiliation. *See id.* The defendant even conceded that the depicted activity likely caused the victim "some discomfort." *Id.* at *13. He simply argued that the enhancement required something more, like urinating on a minor or forcing a minor to wear a dog collar. *Id.* Our decision in *Preston* rightly rejected that argument.

*Preston* is helpful because it explains that penetration with "foreign objects" "raises similar concerns" to penile penetration. *Preston*, 2024 WL 4590865, at *4. Put differently, instead of treating foreign objects as somehow unique, we analogized them to "male anatomy." *Id.* We thus held that foreign-object penetration can qualify for the sadism enhancement just as penile penetration can. To the extent that our language included broad generalizations or suggested a more categorical rule, that approach would be hard to reconcile with our binding precedents (as explained above). *Compare, e.g.*, *id.* at *4 ("Thirteen-year-olds haven't completed puberty."), *with Cover*, 800 F.3d at 281 (rejecting a presumption that eleven- to thirteen-year-olds are necessarily prepubescent).

To summarize, § 2G2.1(b)(4)(A) encompasses visualizations that depict sadistic sexual penetration of minors, whether by physical anatomy or by a foreign object. For depictions involving prepubescent minors, all penetrative activity is inherently sadistic and alone justifies the enhancement. *Corp*, 668 F.3d at 390. But for depictions involving pubescent minors, sexual penetration is not by itself enough. *Cover*, 800 F.3d at 281. The district court must instead find, within the material's four corners, other "visibl[e]" and objective markers of physical pain, emotional suffering, or humiliation. *Id.* at 280; *Corp*, 668 F.3d at 389–90. Those markers can take different forms, like bondage, urination, humiliating costumes or positions, penetration with large or sharp objects, facial expressions denoting distress, or body language suggesting discomfort. *Corp*, 668 F.3d at 390. But without more indicating pain or humiliation, the depiction of pubescent minors engaged in penetrative sexual activity alone cannot justify the enhancement. *Id.*

## II.    The District Court's Application of § 2G2.1(b)(4)(A)

The next question we must answer is whether the district court applied the correct legal standard in this case. If it did not, then we will remand unless the government proves "with

certainty" that the district court would have imposed the same sentence had it applied the proper standard. *United States v. Gates*, 48 F.4th 463, 471 (6th Cir. 2022) (citation omitted).

We look to the district court's written order overruling Vowels-Harper's objection. In that order, the district court properly framed its inquiry at the outset: whether the video, viewed objectively, depicted the infliction of "physical pain, emotional suffering, or humiliation" on the minor. Order, R. 127, PageID 726 (quoting *Corp*, 668 F.3d at 390). But in applying that standard, the court relied on a seemingly per se rule drawn from *Preston*. Quoting *Preston*, the district court found that "it is '[c]ommon sense' that images 'of a middle- and high-school aged girl inserting [foreign] objects into her private parts are sadistic.'" *Id.* at PageID 728 (alterations in original) (quoting *Preston*, 2024 WL 4590865, at *4). It then relied on two facts to find that the enhancement applied here: that Doe was twelve years old and that the video showed her "inserting an 'everyday object[] into her private parts.'" *Id.* (alterations in original) (quoting *Preston*, 2024 WL 4590865, at *5). The court did not consider whether Doe was pubescent. It also did not identify any other facts that could support the application of the enhancement. To be sure, we do not fault the district judge for interpreting *Preston* to support a per se approach here, given some of the broad language in that case. But for the reasons we have explained, reading that language so expansively would conflict with our published precedents regarding visualizations that depict pubescent minors. The approach we describe today harmonizes our precedents. *See United States v. Humphrey*, 287 F.3d 422, 451 (6th Cir. 2002).

Nor has the government shown that the district court would impose the same sentence on remand. The application of the sadism enhancement increased Vowels-Harper's advisory sentence range by roughly eight to ten years. And the government has offered no evidence—beyond the two facts identified in the district court's order—to support the enhancement's application. In fact, the government concedes a detail not addressed by the district court: that "there is no point in the video in which the expression on [Doe]'s face is particularly pained." Appellee Br. at 19. We therefore cannot conclude that any error in the district court's analysis was harmless.

We need not decide whether the video ultimately satisfies the proper standard. As in *Corp* and *Cover*, we leave that fact-intensive determination to the district court in the first instance.[3]

## CONCLUSION

For all the above reasons, we vacate Vowels-Harper's sentence and remand to the district court for resentencing.

---

[3]There is a second reason that Vowels-Harper argues that his sentence is procedurally unreasonable. He says that in rejecting his requested downward variance, the district court relied on an "unfounded assumption" that autism is "effectively indistinguishable" from other mental health impairments. Appellant Br. at 52. Vowels-Harper asserts that it would be erroneous to treat all types of mental illness commonly seen by district courts at sentencing the same as his allegedly "profound[]" autism disorder. Reply Br. at 19. Although he styles this as a challenge to his sentence's substantive reasonableness, his argument is more properly characterized as procedural rather than substantive. *See United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). Based on the materials in the record, we cannot say with certainty whether this portion of the district court's reasoning addressed autism generally or was a finding about Vowels-Harper's autism in particular. But because we are vacating the sentence on other bases, we need not address this argument now and we leave it to the district court to address in the first instance.

—————————

**DISSENT**

—————————

CLAY, Circuit Judge, dissenting. Because the majority's characterization of the correct legal standard for application of the four-level sadism enhancement, U.S.S.G. § 2G2.1(b)(4)(A), is unpersuasive, and because I would affirm the district court's sentence, I respectfully dissent.

Seeking to harmonize the caselaw, the majority requires that, to qualify for the sadism enhancement, an image or video must depict a minor who is either (1) prepubescent or (2) visibly experiencing physical pain, emotional suffering, or humiliation. Although some prior cases reflect this approach, it presents a number of problems and unresolved questions.

To begin, the majority's approach offers no clarity to district courts in determining whether a minor is actually prepubescent. The majority appropriately acknowledges a substantial variation in the development levels of minors across different ages, but leaves the district courts without any governing definition for prepubescence and, even if such definition existed, no guidance for applying that definition in future cases. The majority's approach forces district judges, and in this case, attorneys, to reach a conclusion on whether a minor is prepubescent without any clear guidance or relevant expertise.

The majority contends that, since the parties agree that Doe was not prepubescent at the time of the video, the first avenue for application of the sadism enhancement is foreclosed. But the parties' agreement or concession on an issue is not dispositive, and it does not end our inquiry. *See Orloff v. Willoughby*, 345 U.S. 83, 87 (1953) ("This Court, of course, is not bound to accept the Government's concession . . ."); *accord United States v. Jones*, 667 F.3d 477, 486 (4th Cir. 2012) (holding that, although the government conceded an issue, "such a concession does not necessarily end our inquiry"). As noted by the majority, the government "concedes" that the video shows that Doe has "fully-developed breasts and pubic hair," Appellee Br. at 15, and Vowels-Harper describes Doe as "almost adult-appearing," Appellant Br. at 24. But several other characteristics, in addition to physical ones, inform the inquiry into prepubescence. For this issue, we should not rely on the conclusions of attorneys, who presumably lack the requisite

medical expertise or specialized training and experience to evaluate accurately whether a minor is prepubescent. That determination is more appropriately suited to a qualified medical expert, rather than an attorney or judge. Moreover, that determination is certainly inappropriate for an attorney or judge to make based solely on a minor's appearance as reproduced in an image or video.

This problem is heightened because Doe was only twelve years old during the relevant period in this case. Doe's age places this case at the borderline to automatically qualify for a two-level enhancement. *See* U.S.S.G. § 2G2.2(b)(2) ("If the material involved . . . a minor who had not attained the age of 12 years, increase by 2 levels"). Given Doe's young age, Doe quite possibly may have been prepubescent, and the sadism enhancement could thus apply, but the narrowness of the court's inquiry, the limited information available from the record, and the reliance on the attorneys' conclusions preclude that determination here.

As to the second avenue for application of the sadism enhancement, the majority focuses exclusively on the "four corners of the image" depicting the sexual misconduct. *See United States v. Cover*, 800 F.3d 275, 280 (6th Cir. 2015) (quoting *United States v. Corp*, 668 F.3d 379, 389 (6th Cir. 2012)). In particular, the majority emphasizes the minor's facial expressions and body language to discern whether the minor objectively experienced physical pain, emotional suffering, or humiliation during the sexual misconduct. To this point, the majority highlights that the government "acknowledges there is no point in the video in which the expression on [Doe]'s face is particularly pained," Appellee Br. at 16, and that Vowels-Harper states that Doe's "body does not flinch or recoil as she masturbates," Appellant Br. at 24.

But this emphasis on the visible appearance and reaction of the victim in the material is wholly speculative and unreliable. The majority's approach requires the court to evaluate a victim's reaction while the victim is in the throes of adverse circumstances. This approach assumes that a minor's apparent facial expressions and body language in an isolated and contrived image or video accurately reflect the minor's objective experience, but that assumption defies common sense. This approach fails to take into account that the minor may pretend to tolerate the defendant's treatment or appear comfortable in the image or video to appease the defendant, which often may be the case, or because of the defendant's threats or manipulation.

This approach also fails to take into account that the minor may experience objective physical pain, emotional suffering, or humiliation immediately after or in the minutes, hours, or days following the sexual misconduct depicted in the material.  This approach excludes all outside circumstances, even though those circumstances may illuminate whether the sexual misconduct depicted in the material caused the minor to experience objective physical or mental pain and suffering.

Moreover, there is a persuasive argument to be made that a minor is incapable of providing knowing, intelligent, and informed consent to the depicted sexual misconduct.  And in these circumstances, it is difficult to imagine how a minor would not experience physical or mental pain as a result of nonconsensual sexual conduct.  *Cf. United States v. Gomez*, 628 F. App'x 400, 405 (6th Cir. 2015) (discussing how "sexual abuse of a minor" qualifies as a "crime of violence" under U.S.S.G. § 2L1.2 because "a minor cannot give legal consent to sexual intercourse" so "that type of sexual abuse of a minor would involve force even where the minor purported to consent" (citation and quotations omitted)).  Certainly, the majority's approach cannot accurately capture the feelings or mental state of a minor through the confined frame of an isolated image or video.[1]

Although the depiction in the material is relevant to the inquiry, the court's focus should not be so narrow.  Rather than confine the court's inquiry to the image or video and focus on the victim's appearance and reaction as portrayed in the visual media, the court should consider all relevant circumstances and ultimately focus on the defendant's conduct.[2]  The court's inquiry should include the course of conduct between the defendant and the minor, the events leading up to and after the footage, and the susceptibility of the minor to the defendant's possible manipulation and control, as those considerations yield a more accurate determination of whether a minor may have experienced objective physical pain, emotional suffering, or humiliation due to the events depicted in the material.

---

[1]Parenthetically, this problem is exemplified in the media by teenage Virginia Giuffre, who appears to be smiling and happy in pictures with then Prince Andrew, despite her alleging that he subjected her to extreme sexual abuse.

[2]Indeed, in other areas of the Sentencing Guidelines, we have emphasized that the "focus of the inquiry is on the defendant's action, not the victim's reaction."  *United States v. Ziesel*, 38 F.4th 512, 518-19 (6th Cir. 2022).

Indeed, the overemphasis on the visual depiction in the photo or video has led to disturbing results.　For example, in *United States v. Corp*, this Court reversed the district court's application of the sadism enhancement where the minor testified that, over the course of engaging in "various sexual acts" with the defendant, the defendant "repeatedly asked if he could urinate in [the minor's] mouth and . . . she reluctantly acquiesced after [the defendant] promised to allow her to spit out the urine immediately afterward" but then "grabbed her mouth and forced her to swallow."　668 F.3d at 382-83.　Confining this Court's inquiry to only "the four corners of the image," *see id.* at 389, the Court declined to hold that the several "images of [a minor] with [the defendant's] semen on [her] face" and of the defendant's "penis penetrating [the minor's] mouth" involve "sadistic or masochistic conduct."　*Id.* at 383, 390; *see also Cover*, 800 F.3d at 279-80 (declining to hold that material depicting "an 11- to 13-year-old female engaging in oral to genital intercourse with [an adult] male" is sadistic because the victim was not "visibly pained or prepubescent" (citation modified)).

The majority creates a formula and list of factors for courts to apply in these cases, but it is impossible to categorize the experience of victims in these situations.　In place of the majority's approach, we should presume that material depicting sexual misconduct involving a minor is sadistic in and of itself.　Of course, the defendant may rebut this presumption with evidence.　The district court can resultingly exercise its discretion and judgment to determine whether, under the totality of circumstances, the defendant overcomes the presumption that material depicting sexual misconduct involving a minor is sadistic in a given case.　We already recognize that evaluating materials under the sadism enhancement "involves a case-by-case determination" and requires an "inherently fact-based" inquiry, which is "better suited" for the district court's resolution.　*See Corp*, 668 F.3d at 391.

We also already presume that material depicting "the sexual penetration of a prepubescent child" is "inherently sadistic" because such conduct is "likely to cause pain in one so young."　*Cover*, 800 F.3d at 280 (quoting *Corp*, 668 F.3d at 390).　The nature of such pain may be physical or emotional, including subsequent feelings of trauma or pervasive shame and guilt.　That same logic yields the presumption that any material depicting sexual misconduct involving a minor is inherently sadistic.　And that logic should be held to apply regardless of

whether the minor is prepubescent. All minors may not experience the same level of physical pain, but any minor is likely to experience some form of mental pain, emotional suffering, or humiliation as a result of sexual misconduct with an adult during their formative years. And if such a consequence is not the case, the defendant can present evidence to the contrary.

The burden should not be on the victim to convey to the court in their image or video that sexual misconduct with minors involves objective pain, emotional suffering, or humiliation. Rather, the burden should be on the defendant to prove otherwise. Common sense and human experience inform such an approach.

Regarding Vowels-Harper's sentence, there is no basis in the record of this case for remand to the district court. As to the application of the sadism enhancement, the majority provides little to no new guidance for the district court. The majority urges the district court to make a fact-intensive determination and look for visible and objective markers of physical pain, emotional suffering, or humiliation in the video, which the district court has already done. There seems to be little for the district court to do except reexamine the video. As best that I can tell, the district court has already appropriately considered the video in devising Vowels-Harper's sentence. The district court referenced a relevant case involving similar circumstances, *United States v. Preston*, wherein this Court reasoned that "[p]enetration of private parts with a hairbrush and pencil raises similar concerns to penetration by male anatomy," including that "penetration of minors' bodies causes pain" so the "images of such conduct are sadistic." No. 23-5675, 2024 WL 4590865, at *4 (6th Cir. Oct. 28, 2024). Similar to the thirteen-year-old victim in *Preston*, twelve-year-old Doe "repeatedly inserts what appears to be a marker inside her vagina" in the video. Presentence Investigation Report, R. 126, Page ID #703. It was reasonable, and well within the district court's discretion, for the district court to conclude that the conduct depicted in the video of Doe was sadistic. I am not aware of anything further that the district court needs to do, or can do for that matter, and I believe that the remand will constitute a futile exercise.

Further, it is worth noting that the district court properly concluded that a downward variance in Vowels-Harper's sentence was not warranted on account of his autism. At sentencing, Vowels-Harper argued that the district court should vary his sentence downward on

account of his autism.  Although the district court varied Vowels-Harper's sentence downward by 36 months, the district court rejected a downward variance based on Vowels-Harper's autism. The district court concluded that "a modest downward variance is appropriate . . . based upon Mr. Vowels-Harper's young age and documented immaturity at the time of the crimes" but noted that his autism does "not explain or excuse the criminal behavior at issue here."  Sentencing Transcript, R. 138, Page ID #919.  There is nothing in the record to support the notion that Vowels-Harper's autism proximately caused his behavior, and Vowels-Harper has failed to provide sufficient evidence or argumentation that would suggest that he is entitled to have his sentence revisited based on his autism.

Since Vowels-Harper's sentence was procedurally and substantively reasonable, I would affirm.  I therefore respectfully dissent.